UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARMELO MILLAN, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>CITIGROUP, INC. and CITIGROUP TECHNOLOGY, INC.,<br><br>      Defendants. | Civ. Action No. 07-CIV-3769 (AKH)<br><br>**AMENDED PLAINTIFF'S RULE <u>56.1 DISCLOSURE STATEMENT OF MATERIAL FACTS</u>** |

## <u>PLAINTIFF'S LOCAL RULE 56.1(b) STATEMENT</u>

### Objections

Plaintiff objects to Defendants' Rule 56.1(a) Statement on the grounds that much of Defendants' materials do not comply with Fed. R. Civ. P. 56(e). Plaintiff incorporates this objection into each of his responses below.

Plaintiff objects to Defendants' Rule 56.1(a) Statement on the grounds that it is overly repetitive, contains legal arguments, contains characterizations of facts, and is not a "short and concise statement…of material facts" as required by Local Rule 56.1. Plaintiff incorporates this objection into each of his responses below.

Plaintiff objects to Defendants' Rule 56.1(a) Statement on the grounds that it refers to employees other than Mr. Millan and to the Defendants' general policies, because discovery has been limited solely to Mr. Millan, and he has not had the opportunity to conduct discovery about other employees pursuant to previous orders of this Court. Plaintiff incorporates this objection into each of his responses below.

## Responses

1. Plaintiff objects in that this paragraph is immaterial and no response is required.

2. Plaintiff admits that he worked for Citigroup Technology, Inc. ("CTI") from June of 2000, but adds that he also worked for Defendant Citigroup, Inc. ("Citi"), during this same time. (Millan Dep. at 12 (attached as Exhibit 14 to the accompanying declaration of Janet Walsh.); (Millan Decl. at ¶ 2).

3. Plaintiff cannot admit or deny this statement because he has not had the opportunity to conduct discovery regarding the joint employer status and relationship between Defendants.

4. Plaintiff cannot admit or deny this statement because he has not had the opportunity to conduct discovery regarding the joint employer status and relationship between Defendants.

5. Plaintiff admits that while employed by Defendants he never earned less than $455 per week, but cannot admit or deny this statement because he has not had the opportunity to conduct discovery regarding the joint employer status of and relationship between Defendants.

6. Plaintiff denies that his employment was solely with Defendant CTI and admits the remaining portion of this paragraph. (Millan Decl. at ¶ 2.)

7. Plaintiff objects in that this paragraph is not short and concise in violation of Local Rule 56.1(a). Plaintiff further objects in that this paragraph is immaterial and no response is required.

8. Plaintiff objects in that this paragraph is not short and concise in violation of Local Rule 56.1(a).

9.  Denies. Plaintiff worked at 388 Greenwich Street, New York, New York for approximately two years, from December 2003 to mid to late 2005, when he moved to Warren, New Jersey. (Millan Decl. at ¶¶ 36, 50); (Millan Dep. at 13); (Discepolo Dep. at 62)

10. Plaintiff cannot admit or deny this statement because he has not had the opportunity to conduct discovery regarding any issue other than Mr. Millan's non-exempt status.

11. Plaintiff cannot admit or deny this statement because he has not had the opportunity to conduct discovery regarding any issue other than Mr. Millan's non-exempt status.

12. Denies. Although Plaintiff's official title had been "telecommunications analyst" at the start of his employment with Defendants, he and similarly situated employees were referred to as "technicians" by Thomas Saranello, one of Plaintiff's supervisors. (Saranello Dep. at 48-49). Plaintiff admits that at some time during his employment with Defendants, Richard Braunagel and Thomas Saranello were his supervisors.

13. Plaintiff objects in that this paragraph is immaterial and no response is required.

14. Denies. Although Mr. Millan obtained a CISCO CCNA certification, which included taking an ICND examination (there is no ICND certification), the coursework he completed was not taken through his employment with Defendants – it was something that the Plaintiff did on his own. This certification was not required for either position he held while employed by Defendants. (Saranello

Dep. at 123); (Millan Dep. at 54-5); (Millan Decl. at ¶ 23); (Garza Decl. at ¶¶ 5-8, 15).

15. Denies. Although Mr. Millan obtained a CISCO CCNA certification, the coursework he completed was not taken through his employment with Defendants – it was something that the Plaintiff did on his own. This certification was not required for either position he held while employed by Defendants (Saranello Dep. at 123); (Millan Dep. at 54-5); (Millan Decl. at ¶ 23); (Garza Decl. at ¶¶ 5-8, 15).

16. Denies. While performing his duties and responsibilities, Plaintiff was to follow techniques, procedures and specific standards established in the industry or by Citigroup before he started his employment. (Millan Decl. at ¶¶ 11-12).

17. Admits.

18. Admits.

19. Plaintiff admits that part of his duties and responsibilities was to monitor, manage and resolve end users' connectivity problems using established protocols and procedures. (Millan Decl. at ¶¶ 11-12).

20. Admits.

21. Admits.

22. Denies. (Millan Decl. at ¶ 29).

23. Denies. (Millan Decl. at ¶ 29).

24. Denies. Plaintiff did not create a database but used one that was already created to input information. (Millan Decl. at ¶ 26(j)). When there were build-outs to new locations, he would create a database for the new location using the template

4

already created, while merely inputting the new information. (Millan Decl. at ¶ 26(j)). Essentially, these databases were spreadsheets created in either Excel or Access that included information showing the hardware was connected to each port. (Millan Decl. at ¶ 26(j)).

25. Denies. Without the documentation, a technician would still be able to troubleshoot connectivity issues; it just may take 5-10 minutes longer. (Millan Decl. at ¶ 27).

26. Denies. At the start of his employment, part of Plaintiff's duties and responsibilities included disconnecting unused ports. (Millan Decl. at ¶ 15). This task may or may not have involved the understanding of virtual local area network configuration, which involved knowing three or four simple commands that were standard and easily learned. (Millan Decl. at ¶ 15). However, following a Citigroup audit, it was determined that technicians at Plaintiff's level should not be permitted to perform this task. (Millan Decl. at ¶ 16). Thus, following this alteration of protocol, when a port change had to be made, Plaintiff was required to complete a Layer 2 Switch Port Change Request, which was submitted to the Global Network Connectivity Control group ("GNCC"). (*Id.*)

27. Denies. At the start of his employment, part of Plaintiff's duties and responsibilities included teleneting to a port switch and establishing an Internet session. (Millan Decl. at ¶ 15). However, following a Citigroup audit, it was determined that technicians at Plaintiff's level should not be permitted to perform this task. (Millan Decl. at ¶ 16)

28. Denies. Plaintiff's job related to the lab build-out was limited to connectivity issues. (Millan Decl. at ¶ 26(j)); (Millan Dep. at 81). Plaintiff had no input into the design, layout, etc. of the build-out project. (*Id.*)

29. Plaintiff denies that he took steps to ensure that end users had proper connectivity to the network and states that it was his supervisor's job to ensure availability of sufficient network capacity and the project managers' job to determine how many ports were available. (Millan Decl. at ¶ 27(h)); (Saranello Dep. at 102).

30. Denies. Plaintiff attended meetings regarding moves and build-outs but typically contributed nothing during these meetings. (Millan Decl. at ¶ 27(h)).

31. Denies. The Engineering and Integration Departments determined the number of ports needed to accommodate a move according to established engineering standards. (Millan Decl. at ¶ 27(h)); (Saranello Dep. at 24-5).

32. Plaintiff admits that on very rare occasions he used a micro scanner to measure the distance from the router to the switch, but that it was his supervisor, Mr. Saranello, who used the micro-scanner to measure this distance. Saranello Dep. at 37-41). Plaintiff denies that he himself used a micro-scanner while employed by Defendants but only assisted once or twice. (Millan Decl. at ¶ 34).

33. Plaintiff admits that on rare occasions he installed multiple cables between "multiple" junctions and that this work was always done according to specifications received from the engineering department and reviewed by other departments. (Millan Decl. at ¶ 26(e)).

34. Admits.

35. Plaintiff admits that one of his year-end evaluations has him listed as a "lead Analyst" but denies that he had supervisory responsibility over any other employee and that when he was so desiginated, he was the main technician working on that project. (Saranello Dep. at 124).

36. Admits that he performed work in the Data Center on occasion, but states that it was basically the same work he performed in other areas of Defendants' buildings and did not involve any greater degree of knowledge. (Millan Decl. at ¶ 26(e)); (Saranello Dep. at 85).

37. Denies that he had any responsibilities related to the system administration and engineering of servers and cabling and that his only involvement in server installations was physically installing the hardware and cables, testing the connection and labeling the equipment. (Millan Decl. at ¶ 7(c)); (Saranello Dep. at 53-4); (Garza Decl. at ¶ 9).

38. Denies. (Saranello Dep. at 19, 22, 25, 49-50, 82).

39. Denies. (Millan Decl. at ¶¶ 26(f), 26(h), 31); (Millan Decl. at Exh.1).

40. Denies. (Millan Decl. at ¶ 26(h)); (Millan Dep. at 32)

41. Admits only as it relates to basic server installations and denies that he needed to complete virtual LAN configurations for every server installation. (Millan Decl. at ¶ 33); (Garza Decl. at ¶¶ 12-13).

42. Denies. (Millan Dep. at 98); (Discepolo Dep. at 60).

43. Denies. (Saranello Dep. at 123); Millan Dep. at 54-5); (Millan Decl. at ¶ 23); (Garza Decl. at ¶ 13).

44. Denies. (Saranello Dep. at 123); Millan Dep. at 54-5); (Millan Decl. at ¶ 23); (Garza Decl. at ¶ 12).

45. Denies. Plaintiff was assigned to work on the continuity of business test ("COB") by his supervisor and he merely acted as a secretary, manually inputting the information he received from the compliance department into the document. (Millan Decl. at ¶ 19); (Saranello Dep. at 90-3, 97).

46. Denies. (Millan Decl. at ¶ 19).

47. Denies. (Millan Decl. at ¶¶ 12, 18, 47); (Millan Dep. at 93); (Saranello Dep. at 109, 112-14, 139).

48. Denies. (Millan Decl. at ¶¶ 12, 18, 47); (Millan Dep. at 93); (Saranello Dep. at 109, 112-14, 139).

49. Denies. Although Plaintiff attended such meetings, it was to obtain basic information necessary to complete forms such as the number of closets located in an area and whether the garbage cans in the Data Center were combustible. (Millan Decl. at ¶ 20).

50. Denies that Plaintiff received a promotion when his title changed to Lab Coordinator since he was performing the same duties and responsibilities, and receiving the same salary as when he was a technician. (Millan Decl. at ¶¶ 36-8). This was a lateral move. (*Id.*)[1]

51. Admits.

52. Denies. Amedeo Discepolo was Plaintiff's immediate supervisor for a period of time as lab coordinator after Paul Holder transferred to another position. Mr.

---

[1] Plaintiff did not stipulate that Plaintiff received a promotion when his title changed to Lab Coordinator, but merely stipulated to the date that such change of position occurred.

8

Discepolo was Paul Holder's boss when Plaintiff reported to Mr. Holder. (Millan Decl. at ¶ 39).

53. Admits, although Mr. Discepolo also had an office in the Warren, New Jersey building. (Millan Decl. at ¶ 55).

54. Denies. (Millan Decl. at ¶¶ 51-4); (Millan Dep. at 46-7, 52, 59).

55. Admits as these duties relate to connectivity issues. Denies the remainder of this paragraph. (Saranello Dep. at 123); (Millan Dep. at 54-5); (Millan Decl. at ¶ 23).

56. Denies. (Millan Decl. at ¶¶ 52-3); (Millan Dep. at 46-7, 52, 59). Mr. Milan's entry-level certifications were among the most basic offered by CISCO. (Garza Decl. at ¶¶ 5, 15).

57. Denies. (Millan Dep. at 47, 111).

58. Admits.

59. Denies. (Millan Decl. at ¶ 58); (Saranello Dep. at 151-2).

60. Denies. (Millan Decl. at ¶¶ 52(c), 53); (Millan Dep. at 46); (Discepolo Dep. at 61).

61. Denies. (Millan Decl. at ¶ 52(a)).

62. Denies. (Millan Decl. at ¶¶ 52(a), 52(b)).

63. Denies. (Discepolo Dep. at 72).

64. Admits that Plaintiff physically built the network infrastructure to firewall the Warren Lab following detailed plans. Denies the remainder of this paragraph. (Dicepolo Dep. at 61).

65. Admits that Plaintiff performed these duties under the supervision of his bosses Paul Holder and Les Kleinman. (Millan Dep. at 35-6, 46-7).

9

66. Plaintiff denies that he had the authority to order equipment independently, but that he placed orders for equipment based on the instructions he received from engineers and after he received approval from the procurement department. (Millan Decl. at ¶¶ 57(i), 57(l)); (Garza Decl. at ¶ ¶ 15-16). Plaintiff admits the remainder of this paragraph.

67. Denies. (See, Exhibit A as referenced throughout Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Ex. A"), at Ex.7); (Garza Decl. at ¶¶15-16).

68. Plaintiff admits that a model lab was created, but denies the remainder of this paragraph. (Millan Decl. at ¶¶ 38-9).

69. Denies that he had increased responsibility in the Warren Lab, and admits the remainder of this paragraph. (Millan Decl. at ¶¶ 36-8).

70. Plaintiff admits that his responsibility in the Warren lab included network connectivity, but denies the remainder of this paragraph. (Millan Decl. at ¶¶ 48-9).

71. Denies. (Millan Decl. at ¶ 44); (Garza Decl. at ¶¶15-16).

72. Admits that he ensured that connectivity switches were properly configured and denies the reminder of this paragraph. (Millan Decl. at ¶ 44); (Garza Decl. at ¶¶15-16).

73. Admits.

74. Denies. (Defendants' Ex. A at Dep. Ex. 7).

75. Denies. (Defendants' Ex. A at Dep. Ex. 7).

76. Denies. (Defendants' Ex. A at Dep. Ex. 3).

77. Admits but Plaintiff states that cables he installed were not intricate, but were comprised of just 4 different types which were based on standards developed by others. (Discepolo Dep. at 49-52 (Millan Decl. at ¶ 57(j)); (Garza Decl. at ¶ 11).

78. Denies. (Discepolo Dep. at 179-82). ); (Saranello Dep. at 151); (Garza Decl. at ¶ 11).

79. Denies. (Garza Decl. at ¶¶13, 15).

80. Denies. (Millan Decl. at ¶ 58(s)).

81. Admits.

82. Plaintiff denies that he "designed" any databases while employed by Defendants but that he tracked inventory moving in and out of the Warren Lab using Microsoft Excel Databases, which did not involve computer programming. (Millan Decl. at ¶ 43(c)); (Millan Dep. at 100); (Discepolo Dep. at 84-5); Garza Decl. at ¶14). Plaintiff admits the remainder of this paragraph.

83. Denies. Although Plaintiff may have utilized databases to inventory equipment for insurance purposes, he never created any databases using computer-programming skills and didn't determine the value of such equipment. (Millan Decl. at ¶ 43(d)); (Millan Dep. at 100); (Discepolo Dep. at 84-5); (Garza Decl. at ¶ 14).

84. Plaintiff objects in that this paragraph is not short and concise and improperly incorporates a portion of a deposition exhibit in violation of Local Rule 56.1(a).

85. Admits.

86. Admits.

87. Denies. (Millan Decl. at ¶¶ 63-4); (Millan Dep. at 29-30, 69).

11

88. Plaintiff admits that Mr. Discepolo testified to this at his deposition but Plaintiff has no independent knowledge of these facts.

89. Plaintiff admits that he received two written warnings between September 2006 and February 2007, but denies that his attendance did not improve after he received the first warning.

Dated: New York, New York
March 25, 2008

                                            Respectfully submitted,

*/s/ Janet Walsh*
**SETH R. LESSER (SRL-5560)**
**FRAN L. RUDICH (FL-7757)**
**JANET WALSH (JW-8658)**
LOCKS LAW FIRM, PLLC
110 East 55th Street, 12th Floor
New York, NY 10022
(212) 838-3333
www.lockslaw.com

**ATTORNEYS FOR PLAINTIFF**