LAW OFFICES
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, New York 10178
(212) 309-6000

1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

ATTORNEYS FOR DEFENDANTS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CARMELO MILLAN, individually, and on Behalf of All Other Persons Similarly Situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>CITIGROUP, INC.,<br>CITIGROUP TECHNOLOGY, INC.<br><br>    Defendants. | Civil Action No.  07-CIV-3769<br><br>*Electronically Filed* |

**DEFENDANTS' REPLY BRIEF IN FURTHER**
**SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Sam S. Shaulson (SS 0460)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York  10178
(212) 309-6000

Sarah E. Bouchard (Pa. I.D. #77088)
Sarah E. Pontoski (Pa. I.D. #91569)
*Admitted Pro Hac Vice*
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA  19103-2921
(215) 963-5077/5059

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II.  ARGUMENT ............................................................................................................. 3

    A.  Defendants Are Entitled To Summary Judgment ..................................... 3

    B.  Plaintiff's Primary Duty Was Administrative .......................................... 6

        1.  Plaintiff concedes that he exercised some discretion, which is
            sufficient to meet the short test. ................................................... 6

        2.  The Regulations and case law are clear that Plaintiff exercised
            discretion and independent judgment despite the fact that his
            managers and individuals from other departments reviewed his
            decisions ....................................................................................... 8

        3.  Plaintiff exercised sufficient independent discretion and
            independent judgment even if he followed some procedures when
            he completed his  duties. ................................................................ 9

        4.  The fact that Plaintiff utilized his skills in exercising independent
            judgment and discretion does not defeat summary judgment ................. 13

        5.  Plaintiff cannot create an issue of material fact with respect to
            whether he exercised discretion and independent judgment by
            submitting, at the eleventh hour, a self-serving declaration
            provided  by him and his hired "expert. ................................... 14

        6.  Plaintiff's assertion that some of his work was manual in nature
            does   not defeat a finding that he was exempt under the
            administrative  exemption. ........................................................... 17

        7.  Plaintiff's work was directly related to the general business
            operations of CTI. ....................................................................... 18

    C.  Plaintiff Satisfies The Requirements Of The Computer Professional
        Exemption. .......................................................................................... 22

III.  CONCLUSION ....................................................................................................... 28

# TABLE OF AUTHORITIES

## CASES

**Page**

Arcadi v. Nestle Food Corp.,
38 F.3d 672 (2d Cir. 1994)..........................................................................................4

Bagwell v. Fla. Broadband, LLC,
385 F. Supp. 2d 1316 (S.D. Fla. 2005) .........................................................9, 19, 23, 26

Bergquist v. Fid. Info. Servs., Inc.,
399 F. Supp. 2d 1320 (M.D. Fla. 2005)........................................................................24

Bilyou v. Dutchess Beer Distribs., Inc.,
300 F.3d 217 (2d Cir. 2002)......................................................................................3, 4

Bobadilla v. MDRC, Civ. A. No. 03-9217,
2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005) .................................................... passim

Bohn v. Park City Group,
94 F.3d 1457 (10th Cir. 1996) ........................................................................15, 24, 25

Bosch v. Title Max Inc., No. Civ. A. 03-AR-0463-S,
2005 WL 357411 (N.D. Ala. Feb. 7, 2005) .................................................................11

Bothell v. Phase Metrics, Inc.,
299 F.3d 1120 (9th Cir. 2002) ...................................................................................23

Bratt v. County of Los Angeles,
912 F. 2d 1066 (9th Cir. 1990) ..................................................................................23

Brown v. Henderson,
257 F.3d 246 (2d Cir. 2001)......................................................................................15

Burke v. County of Monroe,
225 F. Supp. 2d 306 (W.D.N.Y. 2002).............................................................14, 23, 26

Castro v. Metro. Trans. Auth., Civ. A. No. 04-1445,
2006 WL 1418585 (S.D.N.Y. May 23, 2006) .............................................................12

Colon v. BIC USA, Inc.,
199 F. Supp. 2d 53 (S.D.N.Y. 2001)...........................................................................17

Cooke v. Gen. Dynamics Corp.,
993 F. Supp. 56 (D. Conn. 1997) ...............................................................................22

Cowart v. Ingalls Shipbuilding, Inc.,
213 F.3d 261 (5th Cir. 2000) ..................................................................................19

Dalheim v. KDFW-TV,
706 F. Supp. 493 (N.D. Tex. 1988) ...........................................................................8

Donovan v. Burger King Corp.,
675 F.2d 516 (2d Cir. 1982).....................................................................................10

Dymond v. United States Postal Serv.,
670 F.2d 93 (8th Cir. 1982) ............................................................................7, 9, 11

Edwards v. Audubon Ins. Grp.,
No. 3:02-CV-1618-WS, 2004 WL 3119911 (S.D. Miss. Aug. 31, 2004) ..............11, 13

Freeman v. NBC,
80 F.3d 78 (2d Cir. 1996) ...........................................................................................8

Golden v. Merrill Lynch & Co., Inc., No. 06CIV2970,
2007 WL 4299443 (S.D.N.Y. Dec. 6, 2007) ...........................................................3, 15

Gorman v. Consol. Edison Corp.,
488 F.3d 586 (2d Cir. 2007).......................................................................................4

Harris v. Key Bank N.A.,
193 F. Supp. 2d 707 (W.D.N.Y. 2002) .....................................................................17

Havey v. Homebound Mortgage, Inc., No. 2:03-CV-313,
2005 WL 1719061 (D. Vt. July 21, 2005) ................................................................10

Haywood v. N. Am. Van Lines, Inc.,
121 F.3d 1066 (7th Cir. 1997) ....................................................................................9

Hippen v. First Nat'l Bank, Civ. A. No. 90-2024-L,
1992 WL 73554 (D. Kan. Mar. 19, 1992) ..................................................................7

Jones v. Goord,
435 F. Supp. 2d 221 (S.D.N.Y. 2006)........................................................................12

Kahn v. Superior Chicken & Ribs, Inc.,
331 F. Supp. 2d 115 (E.D.N.Y. 2004) .......................................................................22

Kavanagh v. Grand Union Co.,
192 F.3d 269 (2d Cir. 1999)........................................................................................4

Kelly v. City of Mount Vernon,
162 F.3d 765 (2d Cir. 1998).................................................................4

Kennedy v. Commw. Edison Co., No. 00-4053,
2003 WL 21785219 (C.D. Ill. June 23, 2003) .............................21

Koppinger v. Am. Interiors, Inc.,
295 F. Supp. 2d 797 (N.D. Ohio 2003).................................................19

Lang v. Midwest Advanced Computer Serv., Inc.,
506 F. Supp. 595 (E.D.Mich. 1981) .................................................23

Lutz v. Ameritech Corp.,
208 F.3d 214, 2000 WL 245485 (6th Cir. Feb. 23, 2000) ...........................16

Marshall v. Burger King Corp.,
504 F. Supp. 404 (E.D.N.Y. 1980), aff'd 675 F.2d 516 (2d Cir. 1982) .........................3

Martin v. Coyne Int'l Enters.,
966 F.2d 61 (2d Cir. 1992)...............................................................4

Martin v. Ind. Mich. Power Co.,
381 F.3d 574 (6th Cir. 2004) ...................................................23, 24, 25, 26

Marting v. Crawford & Co., No. 00-cv-7132,
2006 WL 681060 (N.D. Ill. Mar. 14, 2006).................................................11

Massaro v. N.Y. Times, Inc., No. 87 Civ. 0957,
1988 U.S. Dist. LEXIS 5257 (S.D.N.Y. June 6, 1988) .................................20, 21

Mulverhill v. State of N.Y., No. 87-C-853,
1989 WL 154827 (N.D.N.Y. Dec. 19, 1989)...............................................10

NLRB v. Kentucky River Community Care, Inc.,
532 U.S. 706 (2001)......................................................................13

O'Bryant v. City of Reading, No. 05-4259,
2006 WL 2034590 (3d Cir. July 20, 2006)................................................15

Paddington Partners v. Bouchard,
34 F.3d 1132 (2d Cir. 1994)............................................................4

Pezzillo v. General Tel. & Elec. Info Sys., Inc.,
414 F. Supp. 1257 (M.D. Tenn 1976) ...................................................23

Priest v. Ribelin Lowell & Co. Ins. Brokers, Inc., No. 00-35863,
2001 WL 1579998 (9th Cir. Dec. 11, 2001) ...................................................................14

Rabozzi v. Bombardier, Inc., No. 5:03-CV-1397,
2007 WL 951569 (N.D.N.Y. Mar. 27, 2007) .................................................................17

Raskin v. Wyatt Co.,
125 F.3d 55, 66 (2d Cir. 1997) .......................................................................................17

Reich v. Haemonetics Corp.,
907 F. Supp. 512 (D. Mass. 1995) ..............................................................................9, 20

Reich v. John Alden Life Ins. Co.,
126 F.3d 1 (1st Cir. 1997)................................................................................................21

Renfro v. Ind. Mich. Power Co.,
233 F. Supp. 2d 1174 (W.D. Mich. 2002) ...................................................................3, 20

Renfro v. Ind. Mich. Power Co.,
370 F.3d 512 (6th Cir. 2004) ..................................................................................3, 11, 17

Roe-Midgett v. CC Servs., No. 04-CV-4051-DRH,
2006 WL 839443 (S.D. Ill. Mar. 29, 2006) ...................................................................11

Shaw v. Prentice Hall Computer Publ'g.,
151 F.3d 640 (7th Cir.  1998) ....................................................................................20, 21

Stricker v. Eastern Off Rd. Equip.,
935 F. Supp. 650 (D. Md. 1996).................................................................................21, 22

Turner v. Human Genome Scis., Inc., 292 F. Supp. 2d 738 (D.Md. 2003) ...........................23, 26

## STATUTES

29 U.S.C. § 251(a)(4-5) .........................................................................................................4, 5

## REGULATIONS

29 C.F.R. § 541.201 ..................................................................................................18, 19, 20

29 C.F.R. §§ 541.202 ......................................................................................................7, 20

29 C.F.R. § 541.203 .......................................................................................................7, 9 ,20

29 C.F.R. § 541.207(e)(1) (2004) .................................................................................10

C.F.R. §§ 541.214 .................................................................................................................7

29 C.F.R. §541.300(a)(2) (2008) .......................................................................................24

29 C.F.R. §541.400 .............................................................................................................24

29 C.F.R. § 541.704 (2004) ................................................................................................11

## I.     __INTRODUCTION__

In an attempt to downgrade Plaintiff's responsibilities, Plaintiff's Opposition Brief contends that Defendants have somehow "complicated" the job responsibilities at issue. According to Plaintiff, by *quoting from his resume, performance evaluations, and other documents generated by him and during his employment*, Defendants are attempting to "confuse" this Court into believing that Plaintiff was exempt from overtime, when in fact he was not. Moreover, Plaintiff suggests that this Court should rely only on his self-serving declaration and his recently hired "expert."[1]  This Court, however, should decline Plaintiff's invitation to rewrite his job responsibilities for purposes of this litigation.

In short, this action is nothing more than an attempt by a disgruntled former employee to obtain a windfall in overtime payments for work he knew was not subject to overtime at the time he performed the work.  Indeed, and despite Plaintiff's post hoc attempts to denegrate his duties, Plaintiff's own admissions in documents he authored, in his deposition, throughout his brief and its attachments make clear that Plaintiff's primary duties were exempt from the overtime requirements under both the administrative and computer professional exemptions.

With respect to whether Plaintiff is exempt under the administrative exemption, Plaintiff misstates the law in many respects.  For example, although Plaintiff would like this Court to believe that an employee must *always* or *regularly* engage in independent judgment and discretion, that is not the law.  Indeed, if that were the law, few positions would meet the standard.  Because Plaintiff has admitted at several points in his Opposition Brief that he exercised *some* independent judgment and discretion in the performance of his job, he clearly

---

[1]     The Declaration of Plaintiff's "expert" Peter Garza is inadmissible under Federal Rule of Evidence 702.  The grounds for its inadmissibility are set forth in full detail in Defendant's Memorandum Of Law In Support Of Motion To Strike Peter Garza's Declaration.

meets the exemption on this point.  Moreover, and as is obvious from the plain language of the

federal regulations, Plaintiff's duties were directly related to the general business operations of

CTI.  Not only is there no dispute that he engaged in non-production work, but he engaged in

work relating to "computer network" and "database administration," duties which the regulations

define as quintessential examples of work "directly related to the general business operations" of

a business.  In short, for Plaintiff to suggest that he is not exempt under the administrative

exemption is disingenuous, at best, and tellingly, their response brief spends little time defending

their claims on this exemption for that reason.

There is also no material basis to dispute that Plaintiff is exempt under the computer

professional exemption.  While Plaintiff asserts that he is not exempt because his CCNA

certification was not sufficient to render him a professional under the computer profession

exemption, courts including a court *in this district,* have found such certifications sufficient to

render an individual a professional.  Moreover, Plaintiff's *sworn testimony, resume, and*

*performance appraisals* confirm that as an Analyst, Plaintiff consulted with end users to analyze,

design, and prepare for the reconfiguration of computer networks.  Similarly, Plaintiff's *sworn*

*testimony, resume, and performance appraisals* confirm that as a Lab Coordinator, Plaintiff

analyzed and designed an entire new lab facility, and once the design for the lab was complete,

Plaintiff evaluated all incoming testing efforts in the lab facility and facilitated the various

working relationships with the different groups that utilized the lab.  All of these duties are

recognized as exempt computer professional functions under the Regulations and case law, as

well they should be, given the generous salary and benefits Plaintiff received while at CTI.  In

short, no material issue of fact or law exists, and this Court should grant summary judgment in favor of Defendants.[2]

## II.    ARGUMENT

### A.    Defendants Are Entitled To Summary Judgment.

Plaintiff attempts to mislead this Court by asserting, without any support whatsoever in the law,[3] that Defendants have the burden of proving that he is exempt by clear and convincing evidence.  (Pl's Opp. at 12-13).[4]   It is well settled, however, that "[i]n the Second Circuit, employers bear the burden of proof to establish an exemption only by a preponderance of the evidence."  Golden v. Merrill Lynch & Co., Inc., No. 06CIV2970, 2007 WL 4299443, at *17 (S.D.N.Y. Dec. 6, 2007) (citing Marshall v. Burger King Corp., 504 F. Supp. 404, 406-07 (E.D.N.Y. 1980) (rejecting plaintiff's argument that in context of FLSA claim, defendant must establish exemption by clear and convincing evidence), aff'd 675 F.2d 516 (2d Cir. 1982)); see also Renfro v. Ind. Mich. Power Co., 233 F. Supp. 2d 1174, 1179 (W.D. Mich. 2002) (rejecting plaintiffs' argument that employer bears burden of proving FLSA exemption by clear and convincing evidence and stating that plaintiffs appear to confuse rule of construction with burden of proof), aff'd 370 F.3d 512 (6th Cir. 2004).

---

[2]    Any letter exhibits referenced in this Reply Brief refer to exhibits attached to the Affidavit of Sarah Pontoski, filed along with Defendant's Reply Brief In Further Support Of Motion For Summary Judgment.  Any number exhibits referenced in this Reply Brief refer to exhibits attached to Plaintiff's Memorandum In Opposition To Defendant's Motion For Summary Judgment.

[3]    The Court in Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 222 (2d Cir. 2002), discussed certain rules of statutory construction, but it did not hold that a defendant in an FLSA case has the burden to persuade the trier of the fact by clear and convincing evidence.

[4]    All references to Pl's Opp. refer to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment.

Indeed, courts within the Second Circuit routinely grant summary judgment to employers and dismiss FLSA claims and the Second Circuit routinely affirms such decisions.  See e.g. Martin v. Coyne Int'l Enters., 966 F.2d 61, 64 (2d Cir. 1992) (affirming summary judgment for employer); Arcadi v. Nestle Food Corp., 38 F.3d 672, 675 (2d Cir. 1994) (affirming summary judgment for employer on employees' FLSA claim); Kelly v. City of Mount Vernon, 162 F.3d 765, 770 (2d Cir. 1998) (affirming summary judgment for city on police officers' FLSA claim); Kavanagh v. Grand Union Co., 192 F.3d 269, 272 (2d Cir. 1999) (affirming summary judgment for employer on employee's FLSA claim); Bilyou v. Dutchess Beer Distribs., Inc., 300 F.3d 217, 229-30 (2d Cir. 2002) (affirming summary judgment for employer on employees' FLSA claim); Gorman v. Consol. Edison Corp., 488 F.3d 586, 597 (2d Cir. 2007) (affirming summary judgment for former employer on employees' FLSA claim).[5]

Not only has the Second Circuit endorsed the principle of granting summary judgment in FLSA overtime exemption cases, but Congress, within the FLSA itself, expressed its view that plaintiffs should not be allowed to pursue windfall overtime payments under the FLSA.  See  29 U.S.C. § 251(a)(4-5).  In section 251 of the FLSA, entitled "Congressional findings and

---

[5]    Plaintiff contends that Defendant's argument seeking to dismiss Citigroup Inc. is premature, as Plaintiff allegedly did not have the opportunity to conduct discovery regarding this issue. This simply is inaccurate.  There were multiple questions asked in the depositions as to who employed Plaintiff, as well as who employed his supervisors.  (See Ex. J at 14:10-12; Ex. K at 20:17-19; and Ex. L at 120:7-12).  The fact that Plaintiff does not like the answers provided does not mean that he can delay summary judgment on this point.  Moreover, if Plaintiff believed more discovery on this issue was necessary, Plaintiff should have filed a statement under Rule 56(f) of the Federal Rule of Civil Procedure, which requires a party to submit an affidavit that includes: 1) the nature of the uncompleted discovery, 2) how the facts sought are reasonably expected to create a genuine issue of material fact, 3) what efforts the affiant made to obtain those facts, and 4) why those efforts were unsuccessful. See Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994) ("[a] reference to Rule 56(f) and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(f) affidavit"). Because he failed to do so, and because the evidence is undisputed that Citigroup Inc. is not a proper party in this case, this Court should dismiss Citigroup Inc. from this action.

declaration of policy," Congress expressed specific concern regarding the use of overtime claims by employees to seek "windfall payments, including liquidated damages, of sums for activities performed by them without any expectation of reward beyond that included in their agreed rates of pay," as well as concern regarding "the promotion of increasing demands for payment to employees for engaging in activities no compensation for which had been contemplated by either the employer or employee at the time they were engaged in [the activity]." 29 U.S.C. § 251(a)(4-5).

Here, there is no dispute that Plaintiff agreed to work as an Analyst and a Lab Coordinator for CTI with no promise of overtime compensation. At the height of his career at CTI, his salary and incentive compensation were more than *three times* the required level for exemption status. (SM ¶¶ 5-6).[6] He accepted these positions and payment on a salary basis and knew full well that he would not receive overtime for his services. (Id.). There is likewise no dispute that Plaintiff was very well compensated for the services that he performed, and was not just a mere help desk employee who received a nominal hourly rate. (SM ¶¶ 5-6, Plf's SM ¶ 86[7]; Plf's Decl. ¶¶59, 61[8]; Ex. L at 77:13-15). Plaintiff is no longer an employee and now wants a windfall for the work that he previously performed. (SM ¶¶ 86-89). For the reasons set forth in Defendants' Opening Brief and herein, because Plaintiff meets the tests for exemption under the

---

[6]    All references to SM refer to Defendants' Statement of Undisputed Material Facts filed in support of Defendants' Motion for Summary Judgment.

[7]    All references to Plf's SM refer to Plaintiff's Local Rule 56.1 Statement filed in support of Plaintiff's Opposition To Defendants' Motion For Summary Judgment.

[8]    All references to Plf's Decl. refer to the Declaration of Carmelo Millan filed in support of Plaintiff's Memorandum In Opposition To Defendants' Motion For Summary Judgment.

governing Regulations and case law, he should not be permitted to seek an undeserved windfall, and summary judgment should be granted in favor of Defendants.[9]

**B.    Plaintiff's Primary Duty Was Administrative.**

**1.    Plaintiff concedes that he exercised some discretion, which is sufficient to meet the short test.**

In their Opening Brief, Defendants demonstrated that Plaintiff exercised independent judgment and discretion in connection with the performance of his duties.  For example, Plaintiff was responsible for moving the entire Greenwich Street Lab to a new location in Warren, NJ, and as part of that process he assisted in the initial design and layout of the Warren Lab.  (Defs' Opening Brf. at 16-17).[10]  Plaintiff further exercised discretion and independent judgment when he collaborated with engineers on their testing efforts, ensured that the engineers had the proper lab environment for their testing efforts, tracked the lab's inventory, and created lab policies, and purchased lab equipment.  (Id. at 17-18).  Plaintiff further exercised independent discretion and judgment by, among other things, self-managing his various assignments, making suggestions to engineers in connection with engineering designs to ensure that they met cabling specifications, meeting environmental requirements needed to ensure connectivity, and preparing policies.  (Id. at 19).

Indeed, Plaintiff does not dispute that he exercised independent discretion and judgment in connection with the performance of these duties, and in fact, admits that in performing his duties he exercised *some* discretion and independent judgment.  (Plf's Opp. at 6 & 9).  Instead, in

---

[9]    Plaintiff is not only seeking a windfall by pursuing his own claim, but he is also trying to leverage additional monetary recovery by asserting his claims as a class and collective action. Plaintiff, however, testified that only a handful of people performed the same duties as he (Ex. L at 20:19-20; 48:21-23).

[10]    All references to Defs' Opening Brf. refer to Defendants' Memorandum Of Law In Support Of Motion For Summary Judgment.

an attempt to defeat a finding that he was exempt under the administrative exemption, Plaintiff asserts that his discretion allegedly was not "significant." (Plf's Opp. at 9).  Such an assertion cannot defeat summary judgment, however.  Because the "short test" applies here, Defendants need only show that Plaintiff's positions as an Analyst and Lab Coordinator **_included_** the exercise of some discretion and independent judgment, not that Plaintiff regularly did so.  29 C.F.R. §§ 541.202(a)(1), 541.202(e)(2), and 541.214(a); Hippen v. First Nat'l Bank, Civ. A. No. 90-2024-L, 1992 WL 73554, at *8 (D. Kan. Mar. 19, 1992) ("One important ramification of the 'short test' . . .is that . . .the employee's work need only include work requiring the exercise of discretion and independent judgment, as opposed to customarily and regularly exercising such discretion and judgment.") (emphasis in original); see also Dymond v. United States Postal Serv., 670 F.2d 93, 95 (8th Cir. 1982).  Thus, Plaintiff clearly exhibited discretion and independent judgment when he:

- evaluated new equipment and devices in the lab (Plf's Decl. ¶ 40);

- determined where new devices should be installed in the lab and ensured the proper power and environment standards existed in the lab to support the equipment (id. ¶ 43(a), 57(k));

- drafted and reviewed access requirements to the lab to ensure accuracy and compliance (id. ¶ 43(b));

- inventoried equipment (id. ¶¶ 43(c), 52(a));

- drafted insurance questionnaires (id. ¶ 43(d));

- acted as a "liaison" and advised engineers (id. ¶ 43(e));

- acted as the overall "Lab Caretaker", (id. 43(f));

- evaluated and submitted lab requests detailing work that needed to be completed (id. ¶¶ 44-45, 57(e), (n));

- contacted vendors regarding equipment (id. ¶¶ 44-45, 57(i));

- designed and configured testing beds (id. ¶¶ 44-45);

- engaged in Virtual Threat Management (id. ¶¶ 44-45);

- arranged for the delivery of equipment (id. ¶¶ 44-45);

- arranged for payments for lab power modifications, (id. ¶¶ 44-45);

- managed IP address management and maintained software licenses (id. ¶¶ 44-45); and,

- prepared an entire project map for the move to Warren (id. ¶ 52(c)).

These duties fully support the independent judgment and discretion prong of the

administrative exemption test, and any assertion to the contrary is simply not believable.[11]

> **2.      The Regulations and case law are clear that Plaintiff exercised discretion and independent judgment despite the fact that his managers and individuals from other departments reviewed his decisions.**

Plaintiff has also attempted to downplay his exercise of independent discretion and

judgment by asserting that his managers or individuals from other departments reviewed his

decisions.  (Plf's Opp. at 28).  The DOL Regulations, however, explicitly recognize that the

decisions made by exempt administrative employees in the course of performing their duties

need not even be final decisions and may be subject to review:

> [D]iscretion and independent judgment as used in the regulations . . . does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review.  The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action.  The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after

---

[11]     Plaintiff relies primarily upon Dalheim v. KDFW-TV, 706 F. Supp. 493 (N.D. Tex. 1988), to support his argument that he did not exercise independent discretion and judgment.  (Plf's Opp. at 28).  The Fifth Circuit affirmed the Northern District of Texas' decision in Dalheim, and the Second Circuit specifically found that the Fifth Circuit wrongly decided Dalheim. See Freeman v. NBC, 80 F.3d 78, 85 (2d Cir. 1996).  In fact, in Freeman, the Second Circuit found that a group of television newswriters/editors, producers and field producers were exempt employees.  80 F.3d at 87.

> review does not mean that the employee is not exercising discretion and independent
> judgment within the meaning of the regulations . . . .

29 C.F.R. § 541.207(e)(1) (2004) (internal quotations omitted); see also Dymond, 670 F.2d at 96

(holding that employees performed work requiring exercise of discretion and independent

judgment when decisions were subject to approval or even reversal by higher level

management); Haywood v. N. Am. Van Lines, Inc., 121 F.3d 1066, 1073 (7th Cir. 1997); Reich

v. Haemonetics Corp., 907 F. Supp. 512, 518 (D. Mass. 1995); Bagwell v. Fla. Broadband, LLC,

385 F. Supp. 2d 1316, 1325-6 (S.D. Fla. 2005) (internal cites omitted) (finding that even though

plaintiff did not have ultimate authority to make decisions he exercised independent judgment

and discretion because he made suggestions to supervisors and wrote specifications).

Thus, in his position as an Analyst, the fact that individuals from other departments and

his supervisors ultimately approved certain decisions that Plaintiff made does not defeat a

finding that Plaintiff exercised independent discretion and judgment.  These substantive

suggestions ultimately became part of a connectivity plan or enabled another group to affectively

fix a large connectivity problem.  Similarly, in connection with his Lab Coordinator position, the

fact that Mr. Holder and individuals from other departments ultimately approved some of

Plaintiff's decisions does not defeat the fact that Plaintiff exercised independent discretion and

judgment.  The very useful suggestions made by Plaintiff, and approved by others, ultimately

influenced the layout and procedures in the Warren lab facility.

### 3. Plaintiff exercised sufficient independent discretion and independent judgment even if he followed some procedures when he completed his duties.

Plaintiff further attempts to defeat a finding that he exercised discretion and independent

judgment by asserting that he "merely applied his knowledge to previously implemented

standards in determining which procedure to follow." (Plf's Opp. at 27).  The fact that Plaintiff

9

was required to follow some procedures in completing his duties as an Analyst and Lab

Coordinator, however, does not defeat a finding that he exercised independent discretion and

judgment.  The Second Circuit has held that an employee who was required to follow "detailed

instructions" and uniform company standards nonetheless exercised discretion and independent

judgment.  Donovan v. Burger King Corp., 675 F.2d 516, 521-22 (2d Cir. 1982) ("Donovan I").

In Donovan I, the assistant managers at Burger King, like Plaintiff, claimed that any

discretionary powers they had were wholly dictated by the detailed instructions issued by Burger

King.  Id. at 521-22.  The Court rejected this argument and found that the assistant managers

applied independent judgment and discretion while operating within Burger King's guidelines.

Id.  The court recognized that "the economic genius of the Burger King enterprise lies in

providing uniform products and service . . . .  The exercise of discretion, however, even where

circumscribed by prior instruction, is as critical to that success as adherence to 'the book.'"  Id.

The court explained that the managers exercised discretion while using the guidelines:  "Burger

King, of course, seeks to limit likely mistakes in judgment by issuing detailed guidelines, but

judgments must still be made."  Id. at 522.

　　　　District Courts within the Second Circuit and from around the country have reached

similar conclusions, finding that adherence to detailed guidelines does not negate the use of

independent judgment and discretion.  See e.g., Havey v. Homebound Mortgage, Inc., No. 2:03-

CV-313, 2005 WL 1719061, at *7 (D. Vt. July 21, 2005) (finding that "[t]he fact that an

automated program guided their decision-making process or directed loan approval is not

sufficient to permit a jury to find that Plaintiffs exercised no judgment and discretion in their

duties"); Mulverhill v. State of N.Y., No. 87-C-853, 1989 WL 154827, at *4 (N.D.N.Y. Dec. 19,

1989) (finding that plaintiffs exercised independent judgment and discretion despite being

obligated to follow detailed handbook procedures); <u>Marting v. Crawford & Co.</u>, No. 00-cv-7132, 2006 WL 681060, at *8 (N.D. Ill. Mar. 14, 2006) ("The Seventh Circuit has repeatedly stated that both before-the-fact guidelines and after-the-fact supervision are not incompatible with the exercise of discretion.") (citation omitted); <u>Renfro v. Ind. Mich. Power Co.</u>, 370 F.3d 512, 519 (6th Cir. 2004) (finding despite requirements that they adhere to certain procedures, employees "use[d] their own skill, experience, judgment, and discretion in formulating a repair solution. Additionally, the [employees] exercise independent decision-making when choosing among various options to remedy a problem-for example, determining whether to replace or repair equipment"); <u>Dymond</u>, 670 F.2d at 95; <u>Roe-Midgett v. CC Servs.</u>, No. 04-CV-4051-DRH, 2006 WL 839443, at *15 (S.D. Ill. Mar. 29, 2006); <u>Bosch v. Title Max Inc.</u>, No. Civ. A. 03-AR-0463-S, 2005 WL 357411, at *8 (N.D. Ala. Feb. 7, 2005).

The overwhelming support for this proposition is not limited to case law.  The Department of Labor, in its 2004 FLSA regulations, states that the use of manuals or guidelines does not preclude FLSA exemption because "[s]uch manuals and procedures provide guidance in addressing difficult or novel circumstances and thus use of such reference material would not affect an employee's exempt status."  29 C.F.R. § 541.704 (2004); <u>see</u> also <u>Edwards v. Audubon Ins. Grp.</u>, No. 3:02-CV-1618-WS, 2004 WL 3119911, at *7 (S.D. Miss. Aug. 31, 2004) (finding under both old and new DOL Regulations that, even if the plaintiff "was required to follow detailed manuals, that does not mean he did not exercise discretion and independent judgment") (citation omitted) (<u>citing</u> 29 C.F.R. § 541.704 (2004)).

As the DOL regulations and case law, including Second Circuit case law, confirm, following a policy manual does not defeat the FLSA exemption where the job includes the use of discretion.  Even if it could, however, Plaintiff has not produced evidence of any policies or

procedures that took away his ability to exercise discretion and independent judgment in performing his duties. Instead, time and time again, Plaintiff has cited to unspecified and unexplained industry standards that he was required to follow in performing his job. Plaintiff's bare assertions that he followed industry standards without articulating those standards certainly cannot defeat a finding that he exercised independent discretion and judgment. See Jones v. Goord, 435 F. Supp. 2d 221, 246 (S.D.N.Y. 2006) (bare unsupported assertions cannot defeat summary judgment).

Moreover, the two "policy manuals" that Plaintiff relies upon certainly do not defeat a finding that he exercised discretion and independent judgment. The Process and Control Manual for the Warren Lab is a manual that *Plaintiff wrote* that includes processes and procedures that the engineers who engage in testing in the Warren lab are required to follow. (Plf's Exs. 10 & 13).[12] As part of his duties of managing the lab environment, Plaintiff created this manual so that he could ensure that the engineers that utilized his lab followed certain procedures. (Id.). While the manual may list some of the functions that Plaintiff performed in the lab, it in no way specifies how Plaintiff was required to go about performing those functions. (Id.).

Similarly, the NISS Policies and Procedures Manual did not give specific instructions for how Plaintiff was to go about performing his duties. It is merely a list of tasks that Plaintiff performed as an Analyst, the different computer systems that Plaintiff utilized to obtain assignments, and definitions and descriptions for the various materials and devices that Plaintiff utilized in performing his job. (Plf's Ex. 1). Plaintiff still had to determine how to best perform

---

[12] Individuals who draft policies engage in work that is exempt under the administrative exemption. See Castro v. Metro. Trans. Auth., Civ. A. No. 04-1445, 2006 WL 1418585, at *3, (S.D.N.Y. May 23, 2006) (recognizing that drafting policies is exempt work).

these duties once he received an assignment and had to determine what materials to use or suggest for use in performing each task.  (Id.; Ex. M).

### 4. The fact that Plaintiff utilized his skills in exercising independent judgment and discretion does not defeat summary judgment.

Plaintiff contends that he merely used skill, not discretion and judgment, because he applied his knowledge to determine what procedures to follow.  (Plf's Opp. at 26-28.)  In NLRB v. Kentucky River Community Care, Inc., 532 U.S. 706, 714-15 (2001), however, the U.S. Supreme Court held that the NLRB erred as a matter of law in determining that nursing supervisors did not exercise judgment because the judgment was exercised pursuant to professional or technical training and experience.  Id. at 713.  The Supreme Court found that there was no basis for rejecting the judgment exercised by the supervisors simply because it was informed by professional or technical skill or experience.  Id. at 714-15.  To the contrary, the Supreme Court suggested, sound judgment is based upon professional or technical skill or experience.  Id.[13]

Like the nurses in Kentucky River, in connection with his position as an Analyst, Plaintiff used his skills to exercise discretion and independent judgment to, among other things, determine what recommendations to make the engineering team to ensure sound plans for connectivity and to assist in the creation of policies and procedures.  (SM ¶¶ 26-34, 37-43; Plf's SM ¶¶ 30, 32, 33; Plf's Decl. ¶¶15, 26(h), 27, 30, 31, 33).  Similarly, in his Lab Coordinator position, he used his skill to exercise discretion and independent judgment to "gauge" what needed to be done to effectuate the move of the Lab to Warren and to ensure the proper testing environment for over 400 engineers from 8 different engineering groups.  (SM ¶¶ 57-58, 73-74; Plf's SM ¶¶ 58, 73).

---

[13]  Courts interpreting whether an employees' position required the exercise of discretion and judgment under the FLSA have applied the Court's reasoning in Kentucky River.  See, e.g. Edwards, 2004 WL 3119911, at *6-7.

Plaintiff's assertion that <u>Burke v. County of Monroe</u>, 225 F. Supp. 2d 306 (W.D.N.Y. 2002), supports that he did not exercise independent discretion and judgment is unavailing. In <u>Burke</u>, the plaintiffs merely installed operating systems on computers; they did not decide what software to load or whether to update software, and they engaged in troubleshooting computer hardware problems. 225 F. Supp. 2d at 320-21. Unlike the plaintiff in <u>Burke</u>, Plaintiff admitted in his resume and sworn testimony that he actually gave valuable input to engineers to assist them in the proper design of network connectivity when he performed the functions of an Analyst. (SM ¶¶ 26-34, 37-43, Plf's SM ¶¶ 30, 32, 33; Plf's Decl. ¶¶15, 26(h), 27, 30, 31, 33; <u>see also</u> Ex. M). In addition, as a Lab Coordinator, Plaintiff admitted in sworn testimony that he "gauged" what needed to be done to effectuate the move of the Lab to Warren and to ensure the proper testing environment for over 400 engineers from 8 different engineering groups. (SM ¶¶ 57-58, 73-74; Plf's SM ¶¶ 58, 73). He has also admitted that he used his discretion and independent judgment to plan the layout of the lab facility and its power sources for the lab. (SM ¶¶ 57, 60-62, 64, 66, 70-72, 74-75, 79, 81-83, Plf's SM ¶¶ 64, 81; Plf's Decl. ¶¶ 40, 43(a), (c), (d), (e), (f), 44, 45, 46, 52(a), (b), (c), (d), 53, 57(a), (c), (e), (f), (i), (k), (n), (q), (s)). <u>See Priest v. Ribelin Lowell & Co. Ins. Brokers, Inc.</u>, No. 00-35863, 2001 WL 1579998, at *1 (9th Cir. Dec. 11, 2001) (finding that computer systems manager that recommended appropriate updates to floor plans was engaged in exempt work) Thus, it is clear that Plaintiff exercised independent discretion and judgment in the performance of his duties.

> **5.      Plaintiff cannot create an issue of material fact with respect to whether he exercised discretion and independent judgment by submitting, at the eleventh hour, a self-serving declaration provided by him and his hired "expert.**

During Plaintiff's deposition, he testified that the statements on his resume, which he prepared prior to his deposition and outside the context of litigation, accurately reflect his duties

14

at CTI.  (SM ¶17, n 3; Plf's SM ¶ 17).  In an attempt to avoid summary judgment, Plaintiff has

submitted a declaration that conflicts with his sworn deposition testimony regarding his resume.

The following are just a few examples of how Plaintiff's sworn deposition testimony regarding

the accuracy of his resume conflict with his declaration:

- On his resume, Plaintiff stated that as an Analyst, he created and maintained databases, however, in his declaration, he states that he never designed a database. (Plf's Decl. ¶ 26(j)).

- Plaintiff stated on his resume that as a Lab Coordinator he "evaluated incoming testing efforts and built the proper environment or engaged the proper engineering discipline to assist in the test effort;" however, in his declaration he stated that he merely had someone set up testing equipment.  (Id. ¶ 26(e)).

- On his resume, Plaintiff stated that as a Lab Coordinator he "ordered and installed networking gear, servers and lab supplies;" however, in his declaration, he claims that he "put in orders for basic supplies."  (Id. ¶ 26(i)).

These examples, and the many other factual allegations in Plaintiff's declaration that contradict

Plaintiff's sworn deposition testimony, are impermissible and should not be considered by this

Court when deciding whether Plaintiff exercised independent discretion and judgment.  See

Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (affirming summary judgment for

employer where court refused to permit allegations in employee's affidavit that were made for

first time in affidavit opposing summary judgment and contradicted her deposition testimony);

Golden, 2007 WL 4299423, at *9 (recognizing that "[c]ourts in this Circuit have rejected such

attempts to rely on declarations that contradict the witness's prior deposition testimony and have

granted summary judgment even where the purported new evidence would otherwise create a

triable issue of fact"); Bohn v. Park City Group, 94 F.3d 1457, 1463 (10th Cir. 1996)

(recognizing that "[d]efendants correctly point out, however, that plaintiff's affidavit contradicts

his deposition testimony in which he acknowledged performing many of the tasks set out in the

job descriptions above, and thus the affidavit should not be considered."); O'Bryant v. City of

Reading, No. 05-4259, 2006 WL 2034590, at *4 (3d Cir. July 20, 2006) (holding that plaintiff's submission of declaration that minimized her job duties, contrary to her deposition testimony, for the purpose of arguing that she did not exercise discretion and independent judgment, was not "an impediment to summary judgment").

The self-serving statements made in his declaration should also be disregarded because they conflict with his resume and performance appraisals, which mirror his supervisors' testimony regarding the independent discretion and judgment plaintiff exercised in performing his job duties.[14] See Bobadilla v. MDRC, Civ. A. No. 03-9217, 2005 WL 2044938, at *7-8 (S.D.N.Y. Aug. 24, 2005) (granting summary judgment in favor of employer and finding plaintiff's resume and evaluation forms are probative of plaintiff's duties); see also Lutz v. Ameritech Corp., 208 F.3d 214, 2000 WL 245485, at *3 (6th Cir. Feb. 23, 2000) (granting summary judgment in favor of employer; finding that when plaintiff's own written characterization of his job conform with his manager's description of his job functions, then he cannot attempt to explain away the exempt nature of his job functions).

---

[14]    Plaintiff's performance appraisals confirm that he exercised independent discretion and judgment in exercising his job duties because they establish that he was the lead analyst on several large projects (SM ¶ 35), organized and articulated CTI procedures and policies (SM ¶¶ 45-46), utilized skills and knowledge to enhance project management, task prioritization and organizational skills (SM ¶ 56), drew on his experience to perform multiple roles in the lab migration project, including project management, datacenter management and network integration, (SM ¶ 57), built a firewall, (SM ¶ 64), created a model lab, (SM ¶ 68), staged and prepared all testing environments by evaluating all incoming testing efforts, (SM ¶ 72), provided his insights and decision making authority to those within and outside CTI (SM ¶ 74), requested feedback from the engineering team to make proactive efforts to improve the lab environment (SM ¶ 75), evaluated different vendor products (SM ¶ 76), inventoried all equipment used (SM ¶ 81), created and maintained lab manuals (SM ¶¶ 84-85). Plaintiff does not deny that he never informed his supervisors that these descriptions of his duties were inaccurate at the time that he received his performance appraisals. (Ex. L at 42:10-43:8; 45:18-48:4; 116:18-117:13). Thus, his performance appraisals support that Plaintiff was exempt under the administrative exemption.

Similarly, Plaintiff cannot create an issue of material fact with respect to whether he exercised independent discretion and judgment with his purported expert report because that report is inadmissible in the context of this summary judgment motion.  See, e.g. Colon v. BIC USA, Inc., 199 F. Supp. 2d 53, 68-69 (S.D.N.Y. 2001) (granting defendant's motion for summary judgment; excluding testimony of plaintiff's expert that did not meet evidentiary rules); Rabozzi v. Bombardier, Inc., No. 5:03-CV-1397, 2007 WL 951569, at *7 (N.D.N.Y. Mar. 27, 2007) (same) (citing Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)); Harris v. Key Bank N.A., 193 F. Supp. 2d 707, 716 (W.D.N.Y. 2002) (granting defendant's motion for summary judgment; finding that as plaintiff's expert report would be inadmissible at trial because it contained nothing but legal conclusions, it was inadmissible at summary judgment).  For the reasons set forth in Defendants' Motion to Strike The Declaration of Peter Garza, Mr. Garza's declaration is inadmissible under Federal Rule of Evidence 702, and the Court should not consider it in connection with this motion.

> **6.    Plaintiff's assertion that some of his work was manual in nature does not defeat a finding that he was exempt under the administrative exemption.**

Plaintiff's argument that some of the work that he performed was manual in nature, (Plf's Opp. at 25-26), also does not defeat a finding that he was exempt under the administrative exemption.  Performing some manual work "does not automatically remove an employee from exempt status so long as the manual work is 'directly and closely related to the work requiring the exercise of discretion and independent judgment.'"  Renfro, 370 F.3d at 517 (quoting 29 C.F.R. § 541.203(b)) (affirming summary judgment for employer despite the fact that employees performed some manual work).  In this case, because the non-manual work performed by Plaintiff (i.e., designing a lab facility, evaluating all incoming testing efforts for the lab and assisting in preparing the design for connectivity and maintaining the design to ensure

connectivity) clearly required the exercise of discretion and judgment and was closely related to

any manual work that he allegedly performed, he remains exempt under the FLSA.  There is no

dispute that Plaintiff had an e-mail account, desk and telephone that he utilized to perform many

of his duties and because he had to travel throughout the building to perform some tasks does not

defeat a finding that he performed non manual work.  (SM ¶¶ 45,102,108,114)

> **7.    Plaintiff's work was directly related to the general business
>         operations of CTI.**

Having conceded that he exercised at least some judgment and discretion in carrying out

his primary duties, Plaintiff next argues that his primary duty was not directly related to general

business operations of CTI because, in essence:  (1) his duties only relate to the assurance that

computers were working; (2) every business has computers; and (3) Defendants' reliance on

computers is no more than any other business' reliance on computers these days.  (Plf's Opp. at

23-25).  Plaintiff's assertion, again, is not accurate and is misleading.  Section 541.201(a)

provides that:

> The phrase 'directly related to the management of general business operations' refers to
> the type of work performed by the employee.  To meet this requirement, an employee
> must perform work directly related to assisting with the running or servicing of the
> business, as distinguished, for example, from working on a manufacturing production line
> or selling a product in a retail or service establishment.

See 29 C.F.R. § 541.201(a).

Section 541.201(b) provides several prototypical examples of areas that are common

within each and every business that are necessary for a business to function and provides that

individuals who make up the staff of these service areas engage in work directly related to the

business operations of the employer.  Specifically, Section 541.201(b) provides that individuals

that are engaged in work in the following functional areas engage in work directly related to the

management or general business operations:

> tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing;
> procurement; advertising; marketing; research; safety and health; personnel management;
> human resources; employee benefits; labor relations; public relations; government
> relations; *computer network, internet and database administration*; legal and regulatory
> compliance; and similar activities.

See 29 C.F.R. § 541.201(b) (emphasis added).  Every business relies on these standard

departments, but that does not meet they are production areas unrelated to the management or

business operations of a company.  To the contrary, because these are essential staff functions,

they are directly related to the management and business operations of a company.  See 29

C.F.R. § 541.201(b).  As Plaintiff himself recognizes, like a finance or a human resources

department, a department that focuses on "computer related tasks" is essential to any business in

this day and age.  (Plf's Opp. at 23).  Such a necessary and essential department is clearly

directly related to the general business operations of a major corporation.  See 29 C.F.R. §

541.201(b); Koppinger v. Am. Interiors, Inc., 295 F. Supp. 2d 797, 802 (N.D. Ohio 2003)

(finding plaintiff exempt under administrative exemption because "[p]laintiff was responsible for

the computer system from end to end, a computer system that was clearly integral to defendant's

general business operations."); Bagwell v. Fla. Broadband, LLC, 385 F. Supp. 2d 1316, 1325

(S.D. Fla. 2005) (holding that employee, whose primary duty was developing, improving, and

making his employer's computer network system function reliably, fell under administrative

exemption).

     Moreover, Plaintiff admitted during his deposition that he was not engaged in production

work for CTI or Citi.  (Ex. L at 25:3-21).  Because Plaintiff engaged in non-production work that

assisted in the running or servicing of the business of CTI and engaged in computer network and

database administration, he is exempt under the administrative exemption.  See, e.g., 29 C.F.R. §

541.201(b); Cowart v. Ingalls Shipbuilding, Inc., 213 F.3d 261, 267 (5th Cir. 2000) (holding that

production planners who were responsible for planning "production work" were administratively exempt); Renfro, 233 F. Supp. 2d at 1185-87 (holding that production planners who "produce[d] standard work packages to support the scheduled work" were performing an administrative function because "their decisions play a critical role in determining how [the employer's] resources will be committed before that work is even begun"); Reich v. Haemonetics Corp, 907 F. Supp. 512, 514 (D. Mass. 1995) (holding that analysts who reviewed, and made recommendations regarding, sales and leasing agreements regarding medical equipment before Company entered into each agreement were exempt).

In addition, under the administrative exemption, "[an] employee who leads a team of other employees assigned to complete major projects for the employer…generally meets the duties requirements for the administrative exemption, even if the employee does not have direct supervisory responsibility over the other employees on the team." 29 C.F.R. § 541.203(c). In leading such a team, the individual need not perform tasks that effect the business operation as a whole, as long as he performs tasks that affect a segment of the business. See 29 C.F.R. § 541.202(b) (2008) (recognizing individual may be exempt under administrative exemption "even if the employee's assignments are related to operation of a particular segment of the business"); 29 C.F.R. § 541.202 (b) (old) (same); see also Massaro v. N.Y. Times, Inc., No. 87 Civ. 0957, 1988 U.S. Dist. LEXIS 5257, at *9,12 (S.D.N.Y. June 6, 1988) (finding plaintiff exempt under FLSA who performed work directly related to business operations of advertising department and stating that "[p]laintiff was a member of a team specifically recruited by [employer] to design, develop and implement an advanced computerized information system, which supported the activities of the [advertising department] in making vital decisions regarding advertising sales efforts and promotions"); Shaw v. Prentice Hall Computer Publ'g., 151 F.3d 640, 645 (7th Cir.

1998) (affirming summary judgment for employer; recognizing plaintiff's task of managing

entire project through editing process was major assignment that directly related to general

business operations).  Like the employees in <u>Massaro</u> and <u>Shaw</u>, as a Lab Coordinator, and as

Plaintiff admits in his sworn testimony and on his resume, it was his Plaintiff's responsibility to

handle a large scale project – the development and maintenance of a lab environment in the

Warren lab.  (SM ¶¶ 55, 57-59, 67, 71-73, 76, 79, 82, Plf's SM ¶¶ 55, 58, 73, 79; Plf's Decl. ¶¶

41, 43(a), (c), (d), (e), (f), 44, 45, 46, 52(a), (b), (c), (d), 53, 57(a), (c), (e), (f), (i), (k), (n), (q),

(s)).  The development of this lab facility was clearly essential to CTI's general business

operations, as this facility was the major testing grounds for all new equipment used by CTI.

(SM ¶¶ 7-10).  Similarly, in his position as an Analyst, Plaintiff admits in his sworn testimony

and resume that he was responsible for several large scale projects that were essential to the

continuation of CTI's general business operations of providing connectivity to end users.  (SM ¶

35; Plf's SM ¶ 35).[15]

---

[15]    In addition, individuals who ensure compliance with guidelines to try to reduce or eliminate
equipment breakage are employees who engage in duties that directly relate to an
employer's general business operations.  <u>See</u> <u>Kennedy v. Commw. Edison Co.</u>, No. 00-
4053, 2003 WL 21785219, at *4 (C.D. Ill. June 23, 2003) (finding employee's duties
directly related to general business operations when employer ensured compliance with
guidelines to try to reduce or eliminate equipment breakage).  Like the plaintiff in <u>Kennedy</u>,
Plaintiff performed such duties as both a Lab Coordinator and Analyst.  (SM ¶¶ 26-34, 37-
43, Plf's SM ¶¶ 30, 32, 33; Plf's Decl. ¶¶15, 26(h), 27, 30, 31, 33).

Moreover, individuals who gather available information that affects a major design are
engaged in work directed related to an employer's business operations.  <u>See</u> <u>Reich v. John
Alden Life Ins. Co.</u>,126 F.3d 1, 12 (1st Cir. 1997) (finding employee's work directly related
to general business operations when employees gathered available information which could
effect the design of a new product or offering).  Like the plaintiff in <u>Reich</u>, Plaintiff admitted
that he also performed these duties as both a Lab Coordinator and Analyst to enable
engineers to finalize cable designs and Project Managers to complete the Warren lab design.
(SM ¶¶ 30-31, 38-41; Plf's SM ¶ 30; Plf's Decl. ¶¶ 43, 52).

Finally, individuals who engage in the procurement and taking of inventory are engaged in
tasks that are directly related to an employer's business operations.  <u>See</u> <u>Stricker v. Eastern
Off Rd. Equip.</u>, 935 F. Supp. 650, 657 (D. Md. 1996) (granting defendant's motion for

Thus, it is clear that in both his role as an Analyst and his role as a Lab Coordinator, Plaintiff engaged in work that was directly related to CTI's general business operations.

## C.    Plaintiff Satisfies The Requirements Of The Computer Professional Exemption.

In their Opening Brief, Defendants demonstrated that Plaintiff was exempt under the computer professional exemption because he performed the following tasks as an Analyst and Lab Coordinator: 1) design and assurance of proper installation of cabling infrastructure; 2) consulting with clients regarding LAN design and technical specifications; 3) interacting with vendors; 4) maintaining detailed network documentation; 5) approving site installations of infrastructure and equipment; 6) recommending the purchase of network equipment; 7) taking a design plan, determining technical specifications, implementing the plan, and providing necessary following up; and 8) designing and implementing the build-out of a new network. (Defs' Opening Brf. at 23). In support of this argument, Defendants cited several cases that are directly on point, including Bobadilla v. MDRC, Civ. A. No. 03-9217, 2005 WL 2044938 (S.D.N.Y. Aug. 24, 2005). (Id.).

In his Opposition, Plaintiff has attempted, unsuccessfully, to undermine Bobadilla by citing cases he says support his position. The cases Plaintiff cites, however, do not even address the computer professional exemption, but rather, address the administrative exemption. (Plf's Opp. at 14-21) (citing Cooke v. General Dynamics Corp., 993 F. Supp. 56 (D. Conn. 1997)

---

summary judgment; finding that employee was exempt under the administrative exemption where his job responsibilities included procurement of inventory); Kahn v. Superior Chicken & Ribs, Inc., 331 F. Supp. 2d 115, 120 (E.D.N.Y. 2004) (granting defendant's motion for summary judgment; finding that employee was exempt under the administrative exemption where his job responsibilities included taking inventory). Like the plaintiffs in Stricker and Kahn, Plaintiff admitted in his sworn deposition testimony and on his resume that he was involved in the procurement and taking of inventory in both his roles as an Analyst and Lab Coordinator. (SM ¶¶ 127-129; Pfl's Decl. ¶¶ 82-83).

(considering whether employee was exempt under administrative exemption but not considering whether employee was exempt under computer professional exemption); Burke v. County of Monroe, 225 F. Supp. 2d 306 (W.D.N.Y. 2002) (same), Turner v. Human Genome Scis., Inc., 292 F. Supp. 2d 738 (D.Md. 2003) (same), Bothell v. Phase Metrics, Inc., 299 F.3d 1120 (9th Cir. 2002) (same); Lang v. Midwest Advanced Computer Serv., Inc., 506 F. Supp. 595 (E.D.Mich. 1981) (same); Pezzillo v. General Tel. & Elec. Info Sys., Inc., 414 F. Supp. 1257 (M.D. Tenn 1976) (same); and Bratt v. County of Los Angeles, 912 F. 2d 1066 (9th Cir. 1990) (same)).  As Defendants have overwhelmingly shown that Plaintiff meets the administrative exemption, these cases are unavailing.[16]

In addition, Plaintiff tries to undermine his professional duties by asserting that his CCNA certification is nothing more than a basic certification that does not support that he is qualified as a professional.  (See Plf's. Opp. at 18).  Plaintiff, however, did not cite a single case where a court found that a CCNA certification was insufficient to qualify an individual as exempt under the computer professional exemption.  Courts, however, have found that a CCNA certification is sufficient to qualify an individual as exempt under the computer professional exemption.  See e.g., Bagwell, 385 F. Supp. 2d at 1319, 1328 (finding plaintiff exempt under computer professional exemption based in part on plaintiff obtaining computer and networking certifications, including the CISCO CCNA); Bobadilla, 2005 WL 2044938, at *7 (same).

Finally, Plaintiff asserts that he cannot qualify as a computer professional because he performed work that was allegedly manual in nature.  (Plf's Opp. at 18).  There is, however, no

---

[16]  In addition, Plaintiff incorrectly cited the court's analysis of the administrative exemption in Martin v. Ind. Mich. Power Co., 381 F.3d 574 (6th Cir. 2004), to support his argument that he is allegedly not exempt under the computer professional exemption.  (See Plf's Opp. at 18).

requirement under the computer professional exemption that an individual perform work that is non-manual in nature. 29 C.F.R. §541.300(a)(2) (2008); 29 C.F.R. §541.300(a) (2004). Thus, to the extent Plaintiff's primary duty was manual in nature, which it was not, it is not determinative of whether Plaintiff was exempt under the computer professional exemption.

Instead, unlike the administrative exemption, to qualify as exempt under the computer professional exemption, an individual's primary duty must consist of:

> (1) The application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software or system functional specifications;
>
> (2) The design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> (3) The design, documentation, testing, creation or modification of computer programs related to machine operating systems; or
>
> (4) A combination of the aforementioned duties, the performance of which requires the same level of skills.

See 29 C.F.R. §541.400.[17]

Plaintiff cites to Bohn v. Park City Group, Inc., 94 F.3d 1457 (10th Cir. 1996), and Martin v. Ind. Mich. Power Co., 381 F.3d 574 (6th Cir. 2004), to attempt to support his argument that he is not exempt under the computer professional exemption. Neither Bohn nor Martin, however, support Plaintiff's argument. In Bohn, the court considered whether a technical writer was an exempt employee under the computer professional exemption. 94 F.3d 1457. In this

---

[17] Under the 2004 Amendments to the Regulations, to qualify for the computer professional exemption, an individual is not required to exercise independent judgment and discretion in performing these primary duties. Bergquist v. Fid. Info. Servs., Inc., 399 F. Supp. 2d 1320, 1330 (M.D. Fla. 2005). For the reasons set forth above, and the reasons set forth in Defendants' Opening Brief, Plaintiff clearly exercised discretion and independent judgment in the performance of his job duties as an Analyst and Lab Coordinator, and thus, he is also exempt under the computer professional exemption for duties that he performed prior to the 2004 amendments.

case, Defendants have never claimed that Plaintiff engaged in technical writing, and thus, the duties and functions of his job are in no way comparable to the duties performed by the plaintiff in Bohn.

Similarly, Martin's analysis of the computer professional exemption does not support Plaintiff's claim. In Martin, the Plaintiff truly was a help desk employee - he received trouble tickets, and he responded to those tickets, only consulting with users when they had a problem. 381 F.3d at 577, 580-81. Unlike Plaintiff, the plaintiff in Martin had no computer certifications. Id. at 578. The plaintiff in Martin did not consult with end users to determine hardware, software or system specifications. Id. at 580-81. Instead, he merely installed desktop computers and windows operating systems on those computers. Id.

In both his Analyst and Lab Coordinator positions, Plaintiff Millan did not install computers or computer software. He also was not a help desk employee, and in fact, Plaintiff admits that CTI and Citi had separate help desks. (Millan Dep. at 77:13-15). As an Analyst, Plaintiff consulted with end users to analyze, design and prepare for the reconfiguration of computer networks, and he did not merely consult with end users to diagnose problems. (SM ¶¶ 26-34, 37-43, Plf's SM ¶¶ 30, 32, 33; Plf's Decl. ¶¶15, 26(h), 27, 30, 31, 33; Ex. M at CTI00001673). Similarly, as a Lab Coordinator, Plaintiff analyzed and designed an entire new lab facility and evaluated all incoming testing efforts in that facility and maintained good working relationships with the different groups that utilized the lab. (SM ¶¶ 57, 60-62, 64, 66, 70-72, 74-75, 79, 81-83, Plf's SM ¶ 64; Plf's Decl. ¶¶ 40, 43(a), (c), (d), (e), (f), 44, 45, 46,

52(a), (b), (c), (d), 53, 57(a), (c), (e), (f), (i), (k), (n), (q), (s)).[18]  Moreover, Plaintiff admits that

he designed databases while he was a lab coordinator.  (SM ¶ 81; Plf's SM ¶ 81).

Plaintiff has tried to do everything in his power to undermine his duties and

responsibilities.  At the end of the day, however, Plaintiff's sworn testimony, resume, and

performance appraisals all demonstrate that Plaintiff performed exactly the same duties that the

plaintiff in Bobadilla performed, and which the Southern District of New York has already found

to be exempt duties under the computer professional exemption.

Indeed, Plaintiff appears to be trying the same litigation tactic that was used and rejected

in Bobadilla.  In that case, the Plaintiff also attempted to downgrade his duties, claiming that he

spent the majority of his time performing "help desk functions."  2005 WL 2044938, at *5.  In

reality, however, the plaintiff was involved in meetings regarding the build-out of a new

network.  Id.  Plaintiff configured machines to the new network, which required him to input

new routing configurations into device operating systems.  Id.  The plaintiff claimed that he

setup the network by simply running wires according to specifications from other consultants.

Id.  Despite these attempts to minimize his responsibilities, the court in Bobadilla found that the

---

[18]   Plaintiff's reliance on the October 26, 2006 Department of Labor ("DOL") Opinion Letter
also does not support his position.  The employees discussed in the October 26, 2006
Opinion Letter are like the plaintiff in Martin and quite different from Plaintiff because they
were merely responsible for installing computer equipment and software.  (See Plf's Ex. 17).

Plaintiff also incorrectly asserts that the October 26, 2006 Opinion Letter supports that the
DOL indicated that courts should rely upon Burke, Turner, and Martin when applying the
computer exemption and disregard Bagwell and Bobadilla.  Plf's Opp. at 20, n.6.  In its
October 26, 2006 Opinion Letter, the Department of Labor cited Burke, Turner and Martin,
in support of its finding that a group of employees were not exempt under the administrative
exemption.  (See Ex. 17 to Walsh Decl. at 5).  The DOL did not rely upon these cases in
finding that certain employees were not exempt under the computer professional exemption.
(See Ex. 17 to Walsh Decl).  Thus, the fact the DOL cited Burke, Turner, and Martin, and
not Bagwell and Bobadilla in its October 26, 2006 has no bearing whatsoever on whether
this Court should consider Bagwell and Bobadilla when determining whether Plaintiff is
exempt under the computer professional exemption.

plaintiff had sophisticated knowledge that was above and beyond the knowledge of his employer's nonexempt help desk employees.  Id. at *7.  He was required to design the network, which included configuration of the new network, testing and modification of hardware and software, and the testing and analyzing of networks to ensure that they maintained connectivity. Id.  In addition, the Court found that his resume, which provided that he:  (1) analyzed existing network resources to determine if there was underutilization; (2) implemented configurations, and (3) engaged in LAN/WAN optimization all supported that he was engaged in the design, development and modification of computer systems and therefore, exempt under the computer professional exemption.  Id. at *8.  Finally, the court found that his position description supported that he engaged in duties that characterize the computer employees exempted under Section 213(a)(17), and it described his primary duties as:

> 1. Network Design/Integration/Management
> A. Install, configure and maintain the organization's data/voice network infrastructure.
> B. Implement and integrate LAN/WAN/Web presence to the entire corporation.
> C. Manage, support, design and integrate current and future network infrastructure for the entire organization.
> D. Design, manage and support services, their operating systems, utilities and applications.
> E. Insure reliable delivery of network services on and across servers and all devices attached to the organization[']s network infrastructure.
> F. Present solutions, which would enhance the performance, upgrade, replacement or combination of technologies, directed at MDRC's technical infrastructure.
> G. Configure LAN & WAN network infrastructure devices, understand their functionality and recognize potential problems. Proactively resolve these problems when and where possible.

Id. at *7.

Like the plaintiff in Bobadilla, Plaintiff's sworn testimony and resume reflect that he performed most of these duties as both an Analyst and Lab Coordinator.  (Def's Opening Brf. at 25-27).   Given these similarities, the Court should not permit Plaintiff to utilize the inadmissible testimony of Peter Garza, and Plaintiff's declaration that conflicts with his sworn testimony,

resume, and performance appraisals to downplay these duties. (See supra at 14-17). In short,

the overwhelming and undisputed evidence demonstrates that Plaintiff is exempt under the

computer professional exemption, and he cannot change those duties merely because Plaintiff

now seeks a windfall through this litigation.[19]

## III.    <u>CONCLUSION</u>

For the reasons set forth above, and the reasons set forth in Defendants' Opening Brief,

Plaintiff is exempt under both the FLSA and NYLL, and thus, the Court should dismiss his

claims in their entirety.

Dated: April 1, 2008                            Respectfully submitted,

                                                By: /s/Sarah E. Bouchard_____
                                                Sam S. Shaulson (SS 0460)
                                                MORGAN, LEWIS & BOCKIUS LLP
                                                101 Park Avenue
                                                New York, New York  10178
                                                (212) 309-6000

                                                Sarah E. Bouchard (Pa. I.D. #77088)
                                                Sarah E. Pontoski (Pa. I.D. #91569)
                                                *Admitted Pro Hac Vice*
                                                MORGAN, LEWIS & BOCKIUS LLP
                                                1701 Market Street
                                                Philadelphia, PA  19103-2921
                                                (215) 963-5077/5059

---

[19]    Because Plaintiff clearly meets the requirements for exemption under the administrative exemption and the computer professional exemption, he clearly meets the requirements for exemption under the combination exemption.