UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CARMELO MILLAN, Individually and on
Behalf of All Other Persons Similarly Situated,

Plaintiff,

vs.

CITIGROUP, INC. and CITIGROUP
TECHNOLOGY, INC.,

Defendants.

Civ. Action No. 07-CIV-3769 (AKH)

**FILED UNDER SEAL**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Seth R. Lesser (SR-5560)
Fran L. Rudich (FR-7577)
Janet Walsh (JW-8658)
LOCKS LAW FIRM, PLLC
110 East 55th Street, 12th Floor
New York, New York 10022
Tel: (212) 838-3333
Fax: (212) 838-3735
www.lockslaw.com

**ATTORNEYS FOR PLAINTIFF**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.    Summary of Mr. Millan's Positions at Citigroup . . . . . . . . . . . . . . . . . . . . 4

    B.    Mr. Millan's Duties and Responsibilities at Citigroup . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.    STANDARD GOVERNING SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . 11

    II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
        SHOULD BE DENIED BECAUSE DEFENDANTS SHOW
        AS A MATTER OF LAW THAT ANY FLSA/NYLL
        EXEMPTION APPLIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        A.    FLSA is a Remedial Act and Its
             Exemptions Must be Narrowly Construed . . . . . . . . . . . . . . . . . . . . . . 12

        B.    Carmelo Millan Was Not an
             Exempt Computer Professional . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

        C.    Plaintiff Does Not Fall Within
             the Administrative Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

             1.    Plaintiffs' Primary Duties did not
                  Directly Relate to Defendants' Management
                  Policies or General Business Operations and
                  Consisted of Non-Manual Work . . . . . . . . . . . . . . . . . . . . . . . . . 22

                  a.    Mr. Millan's Primary Duties Were
                      Not Related to Management Policies
                      or General Business Operations . . . . . . . . . . . . . . . . . . . 23

                  b.    Plaintiff's Primary Duties did not
                        consist of office or non-manual work . . . . . . . . . . . . . . . 25

                  2.    Plaintiff Exercised Skill in the Performance of

i

His Primary Duties But Not Discretion and
Independent Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

D.     Millan Is Not a Combination Exempt Employee . . . . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

## CASES

*A.H. Phillips v. Walling,*
   324 U.S. 490 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bagwell v. Florida Broadband, LLC,*
   385 Supp. 1316 (S.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Bennett v. Progressive Corp.,*
   225 F.Supp.2d 190 (N.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bilyou v. Dutchess Beer Distribs., Inc.,*
   300 F.3d 217 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-14

*Bobadilla v. MDRC,*
   2005 U.S. Dist. LEXIS 18140 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*Bohn v. Park City Group, Inc.,*
   94 F.3d 1457 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bothell v. Phase Metrics, Inc.,*
   299 F.3d 1120 (9 th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 24-25

*Bratt v. County of Los Angeles,*
   912 F.2d 1066 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Brock v. County of Lexington, South Carolina,*
   141 F.3d 533 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Burke v. County of Monroe,*
   225 F. Supp.2d 306 (W.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20, 26

*Celotex Corp. v. Catrett,*
   477 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Clark v. J.M. Benson Co.,*
   789 F.2d 282 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Cooke v. General Dynamics Corp.,*
   993 F. Supp. 56 (D. Conn. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 24

*Corning Glass Works v. Brennan,*
    417 U.S. 188 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dalheim v. KDFW-TV,*
    706 F. Supp. 493 (N.D. Tex. 1988)
    *aff'd,* 918 F.2d 1220 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 28

*Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.,*
    204 F.3d 673 (6th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Feaser v. City of New York,*
    1995 U.S. Dist. LEXIS 7871 (S.D.N.Y. June 6, 1995) . . . . . . . . . . . . . . . . . . . . . 13

*IntraComm, Inc. V. Bajaj,*
    492 F.3d 285 (4th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*K&K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.,*
    82 F. Supp.2d 1012 (W.D.Mo. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Koppinger v. Amer. Interiors, Inc.,*
    295 F. Supp.2d. 797 (N.D. Ohio 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27-28

*Lang v. Midwest Advanced Computer Serv., Inc.,*
    506 F. Supp. 595 (E.D. Mich. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lutz v. Ameritech Corp.,*
    2000 U.S. App. LEXIS 3218 (6th Cir. Feb. 23, 2000) . . . . . . . . . . . . . . . . . . . . 27-28

*Marshall v. United Video, Inc.,*
    1978 WL 1772 (N.D. Okla. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Martin v. Indiana Michigan Power Co.,*
    381 F.3d 574 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*Martin v. Penn Line Serv. Inc.,*
    416 F. Supp. 1387 (W.D. Pa. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Mitchell v. Lublin, McGaughy & Assoc.,*
    358 U.S. 207 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Pezzillo v. General Tel. & Elec. Information Sys., Inc.,*
    414 F. Supp. 1257 (M.D. Tenn 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17

*Reeves v. International Tel. & Tel. Corp.,*
    357 F. Supp. 295 (D. La. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Reyes v. Texas Ezpawn,*
    459 F. Supp.2d 546 (S.D. Texas 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Settlement Home Care, Inc. v. Indus. Bd. Of Appeals of Dep't of Labor,*
    542 N.Y.S.2d 346 (App. Div. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Shockley v. City of Newport News,*
    997 F.2d 18 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Torres v. Gristedes Operating Corp.,*
    2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006) . . . . . . . . . . . . . . . . . . . . . 1, 25

*Turner v. Ferguson,*
    149 F.3d 821 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Turner v. Genome Sciences, Inc.,*
    292 F. Supp.2d 738 (D.Md. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 20

*Yourman v. Dinkins,*
    826 F. Supp. 736 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Yuen v. U.S. Asia Commercial Dev't Corp.,*
    974 F.Supp. 515 (E.D. Va. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## <u>STATUTES & REGULATIONS</u>

29 C.F.R. § 541.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 C.F.R. § 541.70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 C.F.R. § 541.200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 27

29 C.F.R. § 541.200(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

29 C.F.R. § 541.201(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 C.F.R. § 541.202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

29 C.F.R. § 541.202(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

29 C.F.R. § 541.205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

29 C.F.R. § 541.214(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 C.F.R. § 541.400 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 C.F.R. § 541.708 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

29 U.S.C. § 207(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. § 213(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. § 213(a)(17) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

## INTRODUCTION

Plaintiff Carmelo Millan, ("Mr. Millan"), individually and on behalf of all other persons similarly situated, has brought suit against Defendants Citigroup, Inc. ("Citi") and Citigroup Technologies, Inc. ("CTI") (together referred to herein as "Citigroup"), for improperly classifying him as an exempt employee and failing to pay him overtime in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and the New York Labor Law ("NYLL") §§ 650, *et seq.*

The FLSA and NYLL are remedial statutes enacted to ensure fair payment for services and to prevent employers from underpaying their employees. Plaintiff asserts that Defendants misused the statutory executive exemption under the FLSA and the NYLL (which imports and follows the FLSA's exemptions[1]) by designating Mr. Millan, a network support technician, as exempt under both the "administrative" and "computer professional" exemptions in order to deprive him, and its other support technicians, of overtime pay. Defendants have moved for summary judgment as to Mr. Millan individually.

Defendants' motion fails for four paramount reasons.

---

[1] The administrative and computer exemptions under the NYLL are, for all relevant respects, identical to those in the FLSA, except for the applicable minimum weekly wage (which is not an issue here). Case law recognizes the NYLL should follow FLSA precedent. *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006). The NYLL is as similarly worker-friendly as the FLSA. It is also a remedial legislation designed to relieve the financial hardships experienced by employees whose employers pay "wages insufficient to provide adequate maintenance for themselves and their families." *Id.* Like the FLSA, the NYLL should be construed liberally, so as to permit as many individuals as possible to take advantage of its benefits. *See Settlement Home Care, Inc. v. Indus. Bd. of Appeals of Dep't of Labor*, 542 N.Y.S.2d 346, 347-48 (App. Div. 1989). Thus, the discussion related to the exemptions under the FLSA applies with equal force to the NYLL's claims.

*First*, to prevail on proving a FLSA exemption, an employer must demonstrate the validity of its designation of an employee to a "clear and convincing" standard. Defendants' ignore the standard – undoubtedly because they know they cannot possibly meet it.

*Second*, Defendants' motion is essentially predicated on putting a fair amount of technical verbiage and specificity before the Court without providing explanations in layperson's terms as to what Mr. Millan did in order to create the illusion of specialized knowledge and responsibility. In actuality, the jargon smoke screen cannot mask the fact that Mr. Millan's activities were those of a technician. He basically installed and tested hardware and cables to connect computers to Citigroup's network, along with some low level administrative duties. Dressing up what he did in jargon and fancier language does not change it – he was essentially a technician without the responsibilities required to meet the statutory exemptions. Illustrative is Defendants' rhetoric describing Plaintiff's responsibility "to ensure that his group utilized the correct policies and procedures when preparing self-assessments of their compliance." (Def. Mem. at 26). In actuality, this involved Mr. Millan completing a questionnaire that covered such matters as "Are the garbage cans in the Data Center combustible or non-combustible?" or "Are there any obstructions within twelve inches of the ceiling?" (Millan Decl. at ¶ 20).

At other places, even Defendants are unfamiliar with the jargon they use. For example, the "ICND Certification" that Plaintiff supposedly obtained and that they rely upon in their brief (*see* Def. Mem. at 28) does not even exist; there is no such certification. Rather the ICND is an examination that is part of a different certification. (Garza Decl. at ¶ 4; Millan Decl. at 23). Interestingly, Mr. Millan's successor as "Lab Coordinator" does not have that certification. (Discepolo Dep. at 124).

2

*Third*, during the course of his employment – which, as relevant here, ran from June 2000 to March 2007 – Mr. Millan's job responsibilities did change, when in 2005, the lab at which he had been working moved from New York City to Warren, New Jersey. Before that date, even though he went through two titles for his job, his responsibilities were basically the same and there is hardly a colorable claim that Mr. Millan was an exempt employee. After that date, the claim is arguable, but nothing more, and Plaintiff believes his case is the stronger one compared to Defendants'; i.e, is, that he still did not meet the requisite standards to be designated as exempt. In all events, however, there are triable issues of the application of fact to the FLSA exemption law in that regard and summary judgment is not warranted.

*Fourth*, the case, as a whole, presents triable issues of fact. Most significantly, Defendants present the testimony they like and disregard the contrary evidence. A simple scan of their brief shows that the large majority of evidentiary citations are to <u>their</u> own witnesses' depositions and they all-but disregard Mr. Millan's contradictory testimony. Patently, summary judgment is inappropriate under such circumstances, but it is doubly so in this case since the burden of proof in asserting a FLSA exemption lies with the employer and not the employee.

In short, Defendant's motion for summary judgment on the merits of Mr. Millan's claim should be denied.[2]

Additionally, Defendants seek the dismissal of Citi from this action on the ground that it was not the statutory employer of Mr. Millan. This is somewhat disingenuous of Defendants because, as they know full well, not only is the issue of whether a defendant is a joint employer under the FLSA a complex one that analyzes numerous factual issues, but discovery in this phase

---

[2] Plaintiff does not challenge Defendants' motion for summary judgment as to his FLSA claim for his work prior to November 6, 2004. The FLSA has a three year (maximum) statute of limitations and, accordingly his FLSA claims cannot go back prior to that date. Mr. Millan's NYLL claims, however, have a six year statute of limitations and, accordingly, his NYLL claims remain viable for the full period back to May 14, 2001, as asserted in his Complaint.

3

of the litigation was explicitly limited, by the Court's direction given at the September 21, 2007,

conference to investigating whether Mr. Millan was an exempt or non-exempt worker.  In fact,

Defendants refused to produce a 30(b)(6) witness from Citigroup, Inc., on the very ground that

the Court "expressed an interest in learning about Mr. Millan's job duties and claims before

opening this case to broader discovery."  Walsh Decl. at Ex. 22.  Since the issue was not part of

the permitted discovery and even Defendants have acknowledged as much, the motion is

premature and should be addressed at a later date when Plaintiff has had the opportunity to

obtain the appropriate discovery.

## STATEMENT OF FACTS

**A.**    **Summary of Mr. Millan's Positions at Citigroup.**

Citi is a multi-national financial services company with customers in more than 100

countries.  (Walsh Decl. Ex. 21).  CTI is a wholly owned subsidiary of Citi.  Mr. Millan began

working for Citigroup in June 2000 as a "Telecommunications Analyst" in the Network

Infrastructure Site Support Group ("NISS").  In December 2003, he transferred to the position of

"Lab Coordinator" in the Global Engineering Department, another division of CTI.  The

evidence (*see* below) is clear that this move was a lateral one.  While a Lab Coordinator, in 2005,

the location where he worked--on Greenwich Street, Manhattan--moved to Warren, New Jersey,

a change that did entail some new responsibilities for a temporary period (although still short of

meeting the statutory exemptions).  Mr. Millan resigned from his position as Lab Coordinator in

March 2007.  This suit was commenced on May 14, 2007.

**B.**    **Mr. Millan's Duties and Responsibilities at Citigroup.**

Defendants present their argument by using a fair amount of technical language, without

providing adequate explanation, intending to suggest significant job responsibility.  Defendants

also place great weight on Mr. Millan's job-hunting resume but, as the Court can well appreciate, that non-judicial document was written with the view to obtaining new, more lucrative employment. Parsing through what he actually did (and did not do) in detail is almost stultifying but it is set out at length in the accompanying Millan Declaration, where he also addresses, line-by-line his resume. Millan Decl. at ¶ 26 and ¶ 57. Further explanation of what he was doing and the level of responsibility and decision-making involved is also set forth in the accompanying expert declaration of Peter Garza. ("Garza Decl.").

In summary, however, while he was a Telecommunications Analyst, as here relevant, from November 2001 through December 2003, Mr. Millan primarily spent his time installing hardware to provide a network connection for Citigroup's employees or, as they were referred, "end-users"; testing the network connections; documenting the network connections by inputting the connection data into a database or spreadsheet; and providing troubleshooting services for network connectivity problems. Saranello Dep. at 24-25, 80-81; Millan Decl. at ¶ 8.

All of the work Mr. Millan performed was based on well-established techniques, procedures, or specific standards within the industry or set by Citigroup. The position did not require a Bachelors Degree, Associates Degree or the completion of any other coursework in computer science. Nor did it require completion of any computer or network certification courses. (Millan Decl. at ¶ 23). His duties and responsibilities did not involve the application of systems analysis techniques and procedures. Nor did it involve the design, development, documentation, analysis, creation, testing or modification of computer systems or programs. He was also not involved in the design, documentation, testing, creation, or modification of computer programs related to machine operating systems. (Garza Decl. at ¶¶ 15-16).

5

Approximately three years into his position as technician for NISS, Mr. Millan picked up some additional responsibilities, particularly, maintaining a Process Control Manual for the NISS Group; preparing the draft for two other documents (a Continuity of Business Plan and a Facilities TRAM); and completing a risk self-assessment questionnaire.  As is relevant here, these duties were performed in accordance with instructions from his supervisors and from Citi's Compliance Department.  (Millan Decl. at ¶¶ 17-19; Millan Dep. at 93; Saranello Dep. at 90-95).  He exercised very little independent judgment or discretion with respect to these assignments, and any discretion he had related to minor, almost trivial, issues, such as a change in someone's phone number.  (Millan Decl. at ¶ 17; Saranello Dep. at 95-97, 112-114).

The new duties did not change his primary work responsibilities.  Mr. Millan continued to perform the day-to-day duties associated with his technician job as a Telecommunications Analyst.  (Millan Decl. at ¶ 21; Saranello Dep. at 114).  In fact, the new matters accounted for no more than 10 to 20% of his responsibilities.  (Millan Decl. at ¶ 21).

Mr. Millan regularly worked in excess of 40 hours per week as a technician for NISS and sometimes in excess of 60.  (Millan Decl. at ¶ 22; Millan Dep. at 23-24).

In December 2003, Mr. Millan transferred to be a "Lab Coordinator" for a lab at 388 Greenwich Street ("Greenwich Lab") that tested new technology for potential use throughout Citigroup.  The Greenwich Lab was under the control of Global Engineering, another department within CTI.  (Millan Decl. at ¶ 35).  The change was a lateral move for Mr. Millan and he remained, to all intents and purposes, a technician.  (Millan Dep. at 28, 40, 57-58).  In fact, the "Lab Coordinator" position was created so that the Greenwich Lab would have its own technician to work on network connectivity issues, instead of having to use the NISS group, a separate cost center.  (Millan Decl. at ¶ 3, 6; Millan Dep. at 19-20).

Tellingly, he received no more pay than he would have had he remained at NISS and, while he hoped the move would advance his career and asked whether he would get paid more, he was told no because the change of position was not a promotion. (Millan Decl. at ¶ 38). Inasmuch as the Greenwich Lab was a test center for new technology, there was a constant turnover of hardware that required installation and troubleshooting and this did add some new features to his job. For example, he became responsible for space allocation in the lab and for receiving lab equipment (in the manner that a secretary is responsible for space allocation and receiving equipment in, say, a law firm – though he himself had no responsibility for ordering or approving the equipment's purchase), Millan Decl. at ¶ 43(c); he had to maintain records of who had access to the lab (although he did not have authority to grant anyone access), *id.* at ¶ 43(b); he had to complete a yearly insurance questionnaire, (which he did not have authority to sign), *id.* at ¶ 43(d); Discepolo Dep. at 75; he had to coordinate, as a "liaison," between different engineering groups, *id.* at ¶ 43(e); and, finally, following a template he was given, he prepared the draft of a manual setting forth such things as how equipment was received at the lab (just as a secretary in a law firm might memorialize filing procedures) and he then had to update the manual (known as the "GE Process Control Manual"), *id.* at ¶ 46.

This work was all performed under the supervision of his supervisor, Paul Holder, who reviewed and approved all documents created by Mr. Millan and oversaw what he did. (*See* Millan Decl. at ¶ 46). The critical point is that, irrespective of what Defendants pretend, his technician work as Telecommunications Analyst had carried over to his Lab Coordinator position and the same work he had previously done – network connectivity support - took up the vast majority of his time – 80 to 90%. (*Id.* at ¶ 47; Millan Dep. at 19-20, 134-35). In fact, if he had not spent most of his time doing connectivity support then he would have been out of a job.

(Millan Dep. at 40).  The work continued to be almost menial in nature, did not require a high level of education, and entailed almost no real authority or responsibility.  *See,* Millan Dep. at 39, Millan Decl. at ¶ 47.  As Mr. Garza summarizes it, "As a carpenter might provide feedback to an architect in the implementation of a design, so did Mr. Millan provide his on-site knowledge in the physical execution of an engineer's network design".  Garza Decl. at ¶ 10.

In connection with his work as Lab Coordinator for the Greenwich Lab, Mr. Millan continued to regularly work in excess of 40 hours per week and sometimes as many as 70 hours. (Millan Decl. at ¶ 42).

Sometime in 2005 it was determined that the Greenwich Lab and other lab facilities in the New York metropolitan area would be relocated to a new facility in Warren, New Jersey (the "Warren Lab").  After two project managers assigned to oversee the migration to the Warren Lab resigned, after spending a total of one year working on the project, the duties and responsibilities associated with orchestrating the move fell to Paul Holder, Mr. Millan's immediate supervisor at the Greenwich Lab.  (Millan Decl. at ¶ 51).

Mr. Holder assigned additional tasks associated with the physical move to Mr. Millan. These additional tasks, however, were almost clerical in nature (akin, again, to what a secretary might do if an office moved) and included preparing inventories of the equipment that needed to be moved and gathering inventories of equipment from the other labs; preparing a list of services that would be required at the new lab (such as phone service, internet service); working on a project map for the move; listing the equipment necessary to complete the move; advising his supervisor what port capacity was necessary at the Warren location based on counting the number of devices to be moved; and allocating space at the new lab.  (Millan Dep. at 35-38, 45-48; Millan Decl. at ¶ 52; Garza Decl, ¶ 10.  Moreover, all of the work he performed in

conjunction with the move was based upon instruction and guidance from Mr. Holder.  (Millan Decl. at ¶¶ 51, 52; Millan Dep. at 46-47).  Throughout this time, Mr. Millan's primary duty remained providing network connectivity for the lab facilities which took up the bulk of his time. (Millan Decl. at ¶ 54; Millan Dep. at 40).

It was in connection with the Warren Lab migration (which, in all events, was a discrete, one-time project) that the 2005 Year End Performance Evaluation (Ex. 11) upon which Defendants rely was created (that evaluation did not cover prior time periods).  However, the language used in the Evaluation to describe Mr. Millan's responsibilities vis-à-vis the move was more simply explained in the testimony of Mr. Discepolo who broke down the tasks to the point where it is clear (again, notwithstanding the bureaucratic jargon) that they encompassed low-level administrative tasks without the use of significant discretion or independent judgment.  For example, Mr. Discepolo testified that Plaintiff's responsibilities with regard to the Warren Lab migration included equipment inventory; shipping and receiving of equipment from the other lab facilities to Warren; doing floor layout or diagrams for the cabinets with the data center planning team; getting an inventory of equipment from a coordinator for all other labs; reviewing the inventories to make sure he has sufficient information so that when the equipment was shipped to Warren he knew where it belonged, who it went to, what connections it needed, what power it required; figuring out which equipment goes in which cabinet; identifying what equipment was needed for the move, like how many shelves, cabinets, cables, routers, switches, etc.  (Discepolo Dep. at 81-86).

Following the move to Warren and as a result of the overwhelming volume of the work involved in both the move and the size of the new facility at Warren, the Plaintiff developed work-related stress.  (Millan Decl. at ¶ 59; Saranello Dep. at 134; Discepolo Dep. at 140-41).  In

2006, he took off sick days and vacation days and reduced his work hours. It became very evident to him that his role as Lab Coordinator, even in conjunction with the move and at the new lab, was and would be no different in any substantial manner from his position as technician for NISS and that, as long as the Warren Lab continued to be understaffed from a network support perspective, Mr. Millan would never advance in his career. (Millan Decl. at ¶ 63; Millan Dep. at 59-61). Accordingly, Mr. Millan resigned from his position in March 2007. (Millan Decl. at ¶ 64).

It is not insignificant that following Mr. Millan's resignation, his then-supervisor Mr. Discepolo prepared an internal request form through the Human Resources Department to obtain a replacement for Mr. Millan, (attached as Exhibit 10 to Discepolo Dep. (Ex. 16)). In it, he sets out the duties and responsibilities associated with Mr. Millan's position. Specifically, the request and Mr. Discepolo's testimony indicate that the Warren Lab had on average about 15 installations of new equipment a week and in some instances as high as 40 per week. (Discepolo Dep., Ex. 10; Discepolo Dep. at 170-72). This contemporaneous document is a clear admission, in effect, that Mr. Millan spent most of his time installing networking equipment and not managing any aspect of the lab in any real way or having any real administrative or high-level computer responsibility.

Not surprisingly, and as noted, Defendants base much of their argumentation on Mr. Millan's resume. But, of course, Mr. Millan was trying to sell himself and while some of the terms might sound impressive, when actually reviewed in detail and reduced to layperson's terms, it is clear that the work performed by Mr. Millan, although involving a certain level of skill and knowledge, was not of the kind required to render Mr. Millan an exempt employee

under the FLSA.  (Garza Decl. at ¶¶ 10-16; Millan Decl. at ¶ 26 and ¶ 57, (analyzing resume line-by-line)).

## ARGUMENT

### I.    STANDARD GOVERNING SUMMARY JUDGMENT.

Defendants give short shrift to the fact that as a FLSA defendant, seeking to prove an affirmative defense on summary judgment, their burden is more substantial than that of, say, a personal injury claimant, *e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 265 (1986), where the Supreme Court held that summary judgment is appropriate only where the moving party showed that the plaintiff was unable, as a matter of law, to establish at least one essential element of its case.

The bar for Defendants is higher here because they have the burden to persuade the trier of fact by "clear and convincing" evidence that Mr. Millan was an exempt employee.  *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 217, 222 (2d Cir. 2002).  "The burden is not insubstantial."  *Brock v. County of Lexington, South Carolina*, 141 F.3d 533, 540 (4th Cir. 1998).  This is a difficult standard to meet in a summary judgment context, unless the facts are susceptible to one interpretation.  Such is not the case here.

Here, genuine disputed issues of material facts are present.  The question of how Mr. Millan spent his working time is a question of fact.  There are numerous conflicts between Mr. Millan's evidence as to the scope of the tasks that he did – or more accurately, did not – undertake while employed by Citigroup.  *Compare* Defendants' Statement of Unopposed Facts *with* Plaintiff's Response to Defendants' Statement of Unopposed Facts.  Factual questions also include the significance of the employee's duties, relative to one another.  *Yuen v. U.S. Asia Commercial Dev't Corp.*, 974 F. Supp. 515 (E.D. Va. 1997).  As shown below, the parties'

contradictory evidence about the actual tasks and responsibility undertaken by Plaintiff precludes the entry of summary judgment.

**II.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DEFENDANTS CANNOT SHOW AS A MATTER OF LAW THAT ANY FLSA/NYLL EXEMPTION APPLIES.**

**A.     FLSA is a Remedial Act and Its Exemptions Must be Narrowly Construed.**

Congress enacted the FLSA to help eliminate labor conditions detrimental to the health and welfare of workers in the United States.  Towards that end, §7(a) of the FLSA requires that employees be compensated at a rate of not less than one and one-half times the regular rate of compensation for all hours they work in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  Plaintiff routinely worked in excess of 40 hours per week and Defendants did not compensate Plaintiff for any overtime hours worked while employed.  Millan Decl. at ¶ 22, ¶ 42.

Defendants contend that Mr. Millan was exempt from the FLSA's coverage under one of (or all of) three provisions of the Act and the corresponding FLSA regulations:  the exemption for administrative employees, 29 U.S.C. § 213(a)(1), the exemption for certain computer professionals, 29 U.S.C. § 213(a)(17), and the combination exemption. 29 C.F.R. § 541.70.

Defendants, however, fail to carry their burden with respect to these claimed exemptions, particularly in light of the rule of narrow construction.  *Bennett v. Progressive Corp.*, 225 F. Supp.2d 190, 215 (N.D.N.Y. 2002); *Shockley v. City of Newport News*, 997 F.2d 18, 24 (4th Cir. 1993). ("Courts construe exemptions to the FLSA narrowly 'in order to further Congress' goal of providing broad federal employee protection.'" (citation omitted)).  Exemptions to overtime coverage are to be narrowly construed.  *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945)("To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and frustrate the announced will of the people."); *Mitchell v.*

*Lublin, McGaughy & Assoc.*, 358 U.S. 207, 211 (1959) (exemptions are to be narrowly construed in order to further Congress' goal of providing broad federal employment protection); *Bilyou v. Dutchess Beer Distrib., Inc.*, 300 F.3d 217, 222 (2d. Cir. 2002).  The exemptions to the FLSA are affirmative defenses and the burden of proof is on the employer to show that they are applicable. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974).

Significantly, employers must prove by clear and convincing evidence that an employee qualifies for exemption. *Yourman v. Dinkins*, 826 F. Supp. 736, 740 (S.D.N.Y. 1993) (noting that "the exemption of § 213(a)(1) is to be narrowly construed and that defendants bear the burden of demonstrating that plaintiffs fall within the exemption"); *Feaser v. City of New York*, 1995 U.S. Dist. LEXIS 7871 at *18 (S.D.N.Y. June 6, 1995)  *Shockley v. City of Newport News*, 997 F.2d 18, 21 (4th Cir. 1993).  As this Court is well aware, this is the highest standard of proof that can be imposed on a party in a civil proceeding.  In attempting to make this showing, "[t]he employer has the burden of establishing by affirmative evidence all the necessary requirements of the exemption," *Dalheim v. KDFW-TV*, 706 F. Supp. 493, 501 (N.D. Tex. 1988), *aff'd*, 918 F.2d 1220 (5th Cir. 1990), and also "bears the full burden of persuasion for the facts requisite to an exemption." *Clark v. J.M. Benson Co.*, 789 F.2d 282, 285-86 (4th Cir. 1986); *see also Pezzillo v. General Tel. & Elec. Information Sys., Inc.*, 414 F. Supp. 1257, 1268 (M.D. Tenn. 1976) ("The employer must show that each employee meets every requirement of the claimed exemption.").

Plaintiff submits that Defendants have failed to carry their burden of demonstrating that they employed him in a capacity to meet any of the claimed exceptions, particularly in light of the clear and convincing evidence standard and the rule of narrow construction.

**B.    Carmelo Millan Was Not an Exempt Computer Professional.**

In order to qualify for the computer professional exemption, an employee's primary duty must consist of one or more of the following:

> (A) the application of systems analysis techniques and procedures, including consulting with users, to determine hardware, software, or system functional specifications;
>
> (B) the design, development, documentation, analysis, creation, testing, or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications;
>
> (C) the design, documentation, testing, creation, or modification of computer programs related to machine operating systems; or
>
> (D) a combination of duties described in subparagraphs (A), (B), and (C) the performance of which require the same level of skills, and
>
> who, in the case of an employee who is compensated on an hourly basis, is compensated at a rate of not less than $27.63.

U.S.C. § 213(a)(17); *see also* 29 C.F.R. § 541.400 (stating that computer systems analysts, computer programmers, software engineers and other similarly skilled workers are exempt under both § 213(a)(1) and § 213(a)(17)). "Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title...." *Cooke v. General Dynamics Corp.*, 993 F. Supp. 56, 61 (D. Conn. 1997).

Here, there is no basis for applying the computer professional exemption. Notwithstanding the Defendants' attempt to imply otherwise, the FLSA does not require that all computer professionals be exempted. Finding that it does would be a "mistake, one that arises from the common perception that all jobs involving computers are necessarily highly complex and require exceptional experience". *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 580 (6th Cir. 2004). Specifically, "[t]he regulations provide that an employee's primary duty must require theoretical and practical application of highly specialized knowledge *in computer system*

14

*analysis, programming, and software engineering* not merely highly specialized knowledge *of computers and software*." *Id.* (emphasis in original).

As should be made clear by the summary above, by Mr. Millan's testimony, by his accompanying declaration and by the declaration of Mr. Garza, what Mr. Millan did almost exclusively involved his knowledge of computers and computer hardware, not of system analysis, programming and software engineering.  He was akin to the employees in the *Martin* case who were, as was Mr. Millan, "merely ensuring that the particular machine was working properly according to specifications designed and tested by other … employees." *Id.* at 581.  In neither of the positions Mr. Millan held was he ever involved in the writing, designing, creation or modification of computer programs or computer systems that is required for the exemption. (Millan Decl. at ¶ 65(a); Saranello Dep. at 150-52; Garza Decl. at ¶¶ 15-16).  Nor, did he apply systems analysis techniques and procedures to determine hardware, software, or system functional specifications, as a Network Analysis or Lab Tech.  (Millan Decl. at ¶ 65(b); Saranello Dep. at 150-152; Garza Decl. at ¶¶ 15-16).  Instead, in both positions, he was merely responsible for the connection of end users to Citigroup's network and the diagnosis of computer network related problems as requested by other employees of the Defendants.  Millan Decl. at ¶ 8; Millan Dep. at 22, 25, 28, 39, 40, 47, 59, Saranello Dep. at 24-25.  Moreover, Mr. Millan did not make determinations about hardware, software or system specifications that were required for a particular end user.  The hardware that he used was standard for the work he performed.  Millan Decl. at ¶ 65(c).  Nor did he ever write new software (or modify an existing computer program to solve a problem he was asked to diagnose).  Millan Decl. at ¶ 65(d); Saranello Dep. at 150; Discepolo Dep. at 182; Garza Decl. at ¶¶ 15-16.  His job had even less of the type of analysis and

design of computer programs than the jobs found to be non-exempt in, for example, *Bohn v. Park City Group, Inc.*, 94 F.3d 1457 (10th Cir. 1996).

In order to overcome the clear and convincing evidence that Mr. Millan does <u>not</u> qualify under the computer professional exemption, the Defendants spend almost the entirety of their brief misconstruing the evidence.  For example, Defendants state that Plaintiff used his ICND and CCNA network certifications and his advanced knowledge of cabling, infrastructure and networking to perform his duties as a Lab Coordinator and Analyst.  (Def. Mem. at 22).  As indicated above, there is no ICND certification and there is no evidence in the record that Plaintiff had any advanced knowledge of networking system engineering, as opposed to a knowledge of the computers, cables and software.  In fact, as clearly established in the declaration of Plaintiff's expert Peter Garza, the CCNA certification is an entry-level networking certificate and the type of network knowledge that Plaintiff required to perform his duties were elementary.  Garza Decl at ¶¶ 4-8.

Defendants further allege that Plaintiff's "sophisticated knowledge of the interconnectivity of different cables was essential to the design, planning and implementation of build-outs, moves, adds and changes".  (Def. Memo at 27-28).  But simply knowing what cable to attach to a computer is a far cry from meeting the requisite exemption and, more importantly, as set forth herein, and Plaintiff's Response to Defendants' Rule 56.1 Statement, this is simply not true.  The responsibility for the design phase of build-out, moves, adds and changes rested with the Engineering Department and went through several layers of approval prior to being assigned to someone in Mr. Millan's position to implement.  Millan Decl at ¶ 26(h).  Mr. Milan put in the cables; he did not design the jobs.  The employer in the *Martin* case tried to make

effectively the same argument, which was summarily rejected by the Sixth Circuit when it found that the defendant "selectively identif[ied] certain words from [the applicable regulation] - particularly "consulting with users" and "testing" - and appl[ied] them out of context. *Id.* at 580. As noted, the use of the jargon cannot hide the fact that the tasks that Mr. Millan performed as they relate to computer networks were low level functions that did not involve a high level of sophistication or expertise.

Once this is recognized, the manner in which Mr. Millan was a non-exempt employee – at all times and in all phases of his employment – is consistent with prior precedent interpreting the computer professional exemption. Thus, in *Burke v. County of Monroe*, 225 F. Supp. 2d 306 (W.D.N.Y. 2002), the court addressed the troubleshooting duties of three computer network administrators that effectively mirror the duties performed by Mr. Millan. *See id.* at 308-14. After considering the plaintiffs' duties as well as the applicable case, statutory and regulatory law, the court in *Burke* denied the defendant's motion for summary judgment. *Id.* at 320-21.[3]

*Burke* is merely one in a line of cases involving similar facts, all of which stand for the proposition that employees in Plaintiff's position are non-exempt.[4] Thus, in *Turner v. Genome Sciences, Inc.*, 292 F. Supp. 2d 738 (D. Md. 2003), the court denied the employer's motion for summary judgment on its computer technician employee's claim for overtime pay. The

---

[3] Although *Burke* was decided under the pre-2004 computer professional exemption, it is doubtful that its outcome would be any different under the current regulations.

[4] *See also,Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120 (9th Cir. 2002)(denying employer's motion or summary judgment because the fact-finder could reasonably conclude that plaintiff's duties of installing, trouble shooting and maintaining electromechanical and computer controlled systems did not satisfy the requirements for the exemption); *Lang v. Midwest Advanced Computer Serv., Inc.*, 506 F. Supp. 595 (E.D. Mich. 1981)(holding that employee engaged in the testing and debugging of computer systems was not exempt and should have been paid overtime by his employer); *Pezzillo v. General Tel. & Elec. Information Sys., Inc.*, 414 F. Supp. 1257 (M.D. Tenn. 1976)(holding that employees who implemented and debugged computer systems were entitled to overtime compensation. Consistent with these cases, Defendants' motion should be denied.

plaintiff's primary duties there were virtually identical to Mr. Millan's — trouble shooting and correcting problems with technological equipment. *Id.* at 742. Like Mr. Millan, the *Turner* plaintiff was not involved in the creation, design or development of any software programs. *Id.* Based on these primary duties, the court held that the employer had not demonstrated that the plaintiffs were exempt employees:

> Rather, Plaintiffs were simply the technicians who keep the company's overall computer and technological systems operating. Maintaining a computerized business is, in this day, part of every company's day-to-day operations and nothing in the record establishes that Plaintiffs had substantial involvement in anything more than general computer operating software and hardware. … Thus, Plaintiffs' work was "production" work, not work related to the administrative operations of HGS. See *29 C.F.R. 541.205(a); Bratt v. County of Los Angeles*, 912 F.2d 1066, 1070 (9th Cir. 1990).

*Id.* at 745.

Yet another such decision supporting Mr. Millan's position is *Martin v. Indiana Michigan Power Co.,* where the court entered judgment for overtime compensation in favor of the plaintiff. There, the employee was an Information Technology Support Specialist I, whose responsibilities included "[d]esign, maintain, verify compliance of all software associated with a [computer] system, coordinate with all departments to ensure efficient & smooth removal & reinstallation [sic] of system components." *Id.* at 952. In holding that the plaintiff's job duties "were primarily manual in nature" the court found that his "duties rendered him utterly unable to satisfy a critical requirement for exempt status." *Id.* at 955-56.

In support of their motion, Defendants mainly rely on two cases. *Bagwell v. Florida Broadband LLC*, 385 F. Supp. 1316 (S.D. Fla. 2005) and *Bobadilla v. MDRC*, 2005 U.S. Dist. LEXIS 18140 (S.D.N.Y 2005). These cases are distinguishable because in both, the employees performed duties substantially and materially different than those performed by Mr. Millan. Specifically, in *Bagwell*, the plaintiff – a "network operation engineer" – was found to be exempt

because he "designed and implemented LAN infrastructure", "scheduled technical field staff for surveys and installations", "approved site installations of infrastructure and equipment", "recommended purchases of network equipment", "evaluated emerging technologies", "recommended employees for a pay raise based on their job performance", "made recommendations about whether individuals should be hired", "approved Expense Reports" (on which he was listed as "Manager"), "approved vacations … and signed off on 'Personal/Vacation Time Off Request Forms'" and "signed time sheets". *Id* at 1319-20. Mr. Millan had no such responsibilities, nor anything close to them, and certainly Defendants cannot point to such a collection of significant duties in this case.

Similarly, in *Bobadilla*, the court found the plaintiff exempt from overtime pay because he had "experience related to network management" and that he was expected to perform "work designing and implementing [defendant's] ... network, a complex project that involved the performance of exempt duties, including the configuration of the new network…." *Id.* at *22, *27-9. Mr. Millan certainly did not "design[]" and "implement[]" Citigroup's network, or even a portion of the network. Garza Decl. at ¶ 10. Moreover, unlike Mr. Millan's job description, as set out in the job requisition completed by Mr. Discepolo to replace Mr. Millan (Discepolo Dep. Ex. 10), the position description for the plaintiff in *Bobadilla* explicitly included "network analysis, design, configuration, and modification as important parts of [plaintiff's] position. *Id.* at * 24. As Mr. Millan's testimony makes clear and as Mr. Garza explains in lay terms, Mr. Millan never did any such work.

In fact, in a fairly recent opinion letter that could have been written about this case, the United States Department of Labor ("DOL") addressed the application of the computer professional exemption to an "IT Support Specialist" whose job responsibilities included,

installing, configuring, and testing upgrades and new business computers and applications and the diagnosis of computer-related problems as requested by employees, and who conducts problem analysis and research, troubleshoots and resolves problems and finally, ensures timely closeout of trouble tickets. The DOL ruled that the employee was non-exempt because the primary duties of this employee did not involve the "application of systems analysis techniques and procedures" nor "the design, development, documentation, analysis, creation, testing or modification of computer systems or programs, including prototypes, based on and related to user or system design specifications." DOL Wage & Hour Op. Letter (October 26, 2006) (attached as Exhibit 17 to the Walsh Decl.).[5] As the Court will observe, this list of duties is quite similar to those performed by the Plaintiff as both a Telecommunications Analyst and Lab Coordinator. Indeed, if there is any disparity between the duties performed by Plaintiff and the duties of the employee in the letter, it is that the employee in the letter had more responsibilities than Plaintiff had while working for Defendants. Since Mr. Millan did not design, develop, analyze, create, test or modify computer systems based on user or system design specifications, he was not an exempt computer professional.[6] (Saranello Dep. at 150-52).

The October 2006 opinion letter is one of several that unequivocally dictate that computer personnel such as Plaintiff are not subject to either the administrative or computer professional exemption of the FLSA. *See* DOL Wage & Hour Op. Letter (May 11, 2001) (attached as Exhibit 18 to the Walsh Decl.); DOL Wage & Hour Op. Letter (Nov.5, 1999) (attached as Exhibit 19 to the Walsh Decl.); DOL Wage & Hour Op. Letter (Aug. 19, 1999) (attached as Exhibit 20 to the Walsh Decl.). As these letters indicate, the DOL, who is entitled to deference as the agency with

---

[6] In this opinion letter, tellingly, the DOL relied upon the same cases Plaintiff relies on herein, *Burke*, *Turner* and *Martin*, while ignoring *Bobadilla* and *Bagwell*, the only cases upon which Defendant relies.

primary responsibility for implementing the FLSA, has repeatedly drawn a distinction between personnel who are responsible for programming, creating and/or designing computer systems, and those employees, like Mr. Millan, whose duties are to install, troubleshoot and/or provide other end-user support.[7] While the former may be exempt under some circumstances, the latter unquestionably are not.

In short, taken as a whole, the record is clear that Mr. Millan did not have the responsibilities or duties – in theory or in actuality – to meet the requirements of being an exempt computer professional within the FLSA's (or the NYLL's) meaning. That was true throughout his employment with Defendants and while he may have added some responsibilities over time, they do not raise to the requisite level. Indeed, the argument that he did, when the Warren Lab assignments arose, is singularly without merit. While, in 2005, he picked up additional responsibilities vis-à-vis the move, they still did not materially change what he was primarily doing – technical networking support work. At a minimum, of course, the case presents triable issues of fact not determinable upon a motion for summary judgment in light of the burden that Defendants face.

**C.        Plaintiff Does Not Fall Within the Administrative Exemption.**

Notwithstanding Defendants' lofty pronouncements describing Mr. Millan's duties and responsibilities, Plaintiff also did not fall within the FLSA administrative exemption. Under the FLSA, unless the following can be established by clear and convincing, undisputed evidence, an employee is not an exempt administrative employee:

---

[7] The views of the DOL are particularly entitled to considerable weight and deference here because those views have been expressed consistently over time. *See, e.g., Fazekas v. Cleveland Clinic Found. Health Care Ventures, Inc.* 204 F.3d 673, 677 (6th Cir. 2000) (stating that the weight given to an opinion letter is dependent upon "its consistency with earlier pronouncements" (*citing Skidmore v. Swift & Co.*, 323 U.S. 134, 140(1944)).

(1) Compensated on a salary or fee basis at a rate of not less than $ 455 per week

(or $ 380 per week, if employed in American Samoa by employers other than the

Federal Government), exclusive of board, lodging or other facilities;

(2) Whose primary duty is the performance of office or non-manual work directly

related to the management or general business operations of the employer or the

employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent

judgment with respect to matters of significance.

29 U.S.C. § 213(a)(1);  *see also* 29 CFR 541.200, *et seq.*[8]

Defendants do not -- and cannot – make such a showing as to the second and third

requirements and their motion should be denied.[9]

1. **Plaintiffs' Primary Duties did not Directly Relate to Defendants'
   Management Policies or General Business Operations and Consisted of Non-
   Manual Work.**

Initially, Defendants' job-title labels of Millan as "Telecommunications Analyst"

and "Lab Coordinator" are of no consequence in the analysis of whether he was exempt.

A title alone is "of little or no significance" in determining the true importance of an

employee to the employer or [her] exempt or nonexempt status; rather, "the exempt or

nonexempt status of any particular employee must be determined on the basis of whether

[her] duties, responsibilities, and salary meet all the requirements of the appropriate

section of the regulations."  29 C.F.R. § 541.201(b).  Thus, putting to the side Plaintiff's

---

[8] As with the regulations related to the computer professional exemption, regulations related to
the administrative exemption were amended in 2004.  These amendments, however, did not
significantly change the criteria for the administrative exemption in Mr. Millan's case. *Compare*
29 C.F.R. §§ 541.2, 541.214(a) (2003) *with* 29 C.F.R. § 541.200(a) (2006).

[9] Plaintiff does not deny that he earned less than $455 per week.

title, Defendants cannot establish that he was subject to the administrative exemption because his primary duty was not directly related to management or general business operations.

### a. Mr. Millan's Primary Duties Were Not Related to Management Policies or General Business Operations.

As summarized above and detailed in Mr. Millan's declaration, his duties were clearly not "directly related to management policies or general business operations." The DOL has stated that "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business...." 29 CFR 541.201(a).

Here, there can hardly be any question that Citigroup is one of the most pre-eminent financial services company in the world, "with some 200 million customer accounts in more than 100 countries." *See, e.g.*, page from Citi's website, http://www.citigroup.com/citigroup/about/, attached as Ex. 21 to the Walsh Decl. Nevertheless, in their motion, Defendants' focus on Plaintiff's computer related tasks is misplaced since there can be no denying that computers are as important to Defendants as they are to any business these days. Nowhere do Defendants argue that their reliance on computers was anything more than the standard reliance that any company has as a requirement to function and be competitive in today's business environment. Therefore, in its effort to prove the directly related element of the standard for exempt administrative employees, Defendants have clearly overstated the importance of Plaintiff's troubleshooting duties to the operation of the business. For example, Defendants write that if even one trader lost connectivity, "the financial consequences could be substantial – perhaps millions of dollars." Def. Memo at 14. This is just plain hyperbole, since Defendants had several layers of backup technology to prevent this from happening and, of which, the

23

maintenance of each successive level was the responsibility of employees who were superior to Plaintiff both in terms of title and level of responsibilities. Millan Decl. at ¶¶ 27-28.

The fallacy in Defendants' argument is that the same loss of money could occur, for example, if a security guard at, say, the Greenwich Street facility failed in his duty of checking IDs (or fell asleep), and a computer hacker walked in and crippled Citigroup's operations from top to bottom, not just to the tune of a few million dollars. But the idea that the guard would be non-exempt under the administrative exemption is ludicrous. This is why, as the DOL's regulations state, "an employee does not exercise discretion and independent judgment with respect to matters of significance merely because the employer will experience financial losses if the employee fails to perform the job properly." 29 CFR 541.202.

Ultimately, that is also why the Administrative exception test is "met [only] if the employee engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business affairs." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9 th Cir. 2002). As shown, the nature of Plaintiff's primary duties was to install hardware to establish network connectivity and to troubleshoot network connections used by the company's end-users. He obviously did not engage in the running of Citigroup's financial businesses and did not determine any company policies. Thus, the directly-related element of the administrative exemption cannot be satisfied here.

This is particularly so because the question of whether this element has been satisfied is clearly a fact-intensive one, *See, e.g., Cooke*, 993 F. Supp. at 60. Therefore, making such a determination as a matter of law should be reserved for only the most straightforward of cases. *See, e.g., Bothell*, 299 F.3d at 1128-29 (reversing lower court's

grant of summary judgment in favor of employer and holding that this question should have been reserved for the fact-finder at trial.)

### b.  Plaintiff's Primary Duties did not consist of office or non-manual work.

Defendants have the additional burden of proving by clear and convincing evidence that Plaintiff's primary duties consisted of office or non-manual work.  This burden cannot be met because Plaintiff's duties did, in fact, mainly constitute manual labor.  Plaintiff's installation and troubleshooting duties with respect to the Defendant's connectivity and computers commonly and essentially called upon him to work with his hands day-in, day-out and that is, as shown, what he spent most of his time doing.  Millan Decl. at ¶¶ 8, 21, 47.  Installing computer equipment, connecting cables, running wires, applying testing devices, moving equipment, etc. all involve work of a manual nature.

As recognized by courts in this circuit and throughout the country, employees who spend most of their time in using tools, instruments, machinery or other equipment, or in performing repetitive operations with their hands, no matter how much skill is required, are not exempt under the FLSA.  *Torres v. Gristede's Operating Corp.*, 2006 U.S. Dist. LEXIS 74039 (S.D.N.Y. Sept. 28, 2006); *Marshall v. United Video, Inc.*, 1978 WL 1772 (N.D. Okla. 1978).  That is why, if a jury were to consider (as a reasonable jury could well do) the Plaintiff to be "a highly skilled repairman whose primarily duty was to install, troubleshoot, and maintain [computer] equipment, [he] would not qualify as exempt and would be entitled to overtime compensation." *Bothell*, 299 F.3d at 1120, 1128-29.  At best, only at the end of his employment with Defendants, when working on the migration to the Warren Lab could this arguably have changed but, as also shown

25

above, Mr. Millan's primary responsibilities still remained in the manual labor realm of working

with the computer hardware for the network connectivity.

Defendants bear the burden of production and persuasion in this case to show that

Plaintiff performed non-manual work. On the record currently before the Court, Defendants

have not met this burden and its motion for summary judgment should therefore be denied.

## 2. Plaintiff Exercised Skill in the Performance of His Primary Duties But Not Discretion and Independent Judgment.

In order to prevail in this case, Defendants must also prove by clear and convincing

evidence that Plaintiff exercised discretion and independent judgment in the performance of his

primary duties for the company. As pertinently stated:

> In general, the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term … implies that the person has authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

*Burke*, 225 F. Supp.2d at 317. To try to satisfy their strict burden of proof, Defendants portray

Plaintiff's primary responsibilities as requiring such an exercise of discretion and independent

judgment, when in reality, these duties simply required the use of skill. This distinction is quite

significant because, while the former may provide grounds for exemption from overtime pay, the

latter will not:

> The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources.

29 CFR 541.202(e); *see also Burke*, 225 F. Supp.2d at 309, 321.

Moreover, if an employee is using his or her skills, in contrast to the exercise of

discretion and independent judgment, it does not matter how adept that employee is in the

performance of his primary duties – he or she is *not* exempt. In other words, an employee's level

26

of expertise in applying their skills is simply not a relevant inquiry. For example, as recognized in *Martin v. Penn Line Serv. Inc.*, 416 F. Supp. 1387 (W.D. Pa. 1976), even someone as highly trained as a helicopter pilot is entitled to overtime compensation. In so ruling, the court therein stated

> [T]he record [does not] support any basis to conclude that plaintiffs performed any administrative duties or engaged in the exercise of any discretion or independent judgment. On the contrary, plaintiffs performed their duties through the reliance on their skills and techniques acquired by their training and experience. Without a doubt, plaintiffs' decisions and performances were guided within the context of those skills and training. However, all decisions or judgments which would necessarily involve a major policy change could only be taken after consultation with their superior.

*Id.* at 130 (*citing Reeves v. International Tel. & Tel. Corp.*, 357 F. Supp. 295 (D. La. 1973)).

In their motion papers, Defendants misapply the terms "discretion and independent judgment" by failing to recognize the FLSA's difference between skill and discretion. *See, e.g.*, Def. Memo at 21. Here, in performing his prescribed duties, Mr. Millan merely applied his knowledge to previously established and implemented standards in determining which procedure to follow. This does not meet the "exercising discretion and independent judgment" requirements of 29 U.S.C. § 213(a)(1) and 29 CFR 541.200.

Defendants' reliance on *Lutz v. Ameritech Corp.*, 2000 U.S. App. LEXIS 3218 (6th Cir. Feb. 23, 2000), and *Koppinger v. Amer. Interiors, Inc.*, 295 F. Supp.2d 797 (N.D. Ohio 2003), is thus misplaced. In the very brief *Lutz* opinion, which is of no precedential value under Sixth Circuit rules, the Sixth Circuit found that a field engineer was exempt from overtime pay because his primary duty "center[ed] around designing and overseeing a plan to provide [defendant] access to the intra-office computer network." *Id.* at *6. Similarly, the court in *Koppinger*, in granting a motion for summary judgment in the employer's favor, found that plaintiff was "a one-man department" who not only maintained all defendants' computers, also made

27

recommendations about what software/hardware the company should purchase. *Id.* at 799. Charged with managing the computer systems from end to end, plaintiff decided what needed to be done, when it needed to be done, with almost no supervision. *Id.* Even at the period of time where Mr. Millan had the greatest authority and responsibility – the Warren lab migration, he still never was a "one-man department" but rather worked under the control and supervision of Mr. Holder and Mr. Discepolo.

That is why the facts in both *Lutz* and *Koppinger* could not be more different from those present here. As detailed in Mr. Millan's declaration the work he was tasked to perform well-established techniques, procedures and standards and monitored by his superiors. Millan Decl. at ¶¶ 11, 12, 26, 33, 56. Clearly, Plaintiff used his skills, rather than the exercise of independent judgment, in performing his primary duties for Defendants.

This case more closely resembles the situation that was presented in *Dalheim v. KDFW-TV*, 706 F. Supp. 493 (N.D. Tex. 1988). There, the court held that highly trained and educated newscast producers and directors were not exempt administrative employees. The court held that producers were entitled to overtime because they "use[d] techniques, procedures, repetitious experiences and specific standards to perform their work...." *Id.* at 508. As for the directors, the court likewise found them entitled to overtime by reasoning that "[t]he calling of a newscast involves highly developed skills, executed under pressure and arduous time constraints, but does not involve discretion and independent judgment in the sense envisioned by the regulations." *Id.* at 508-09.

When all the facts (which are in dispute) are considered, as they must be, a fact-finder could reasonably find that Defendants failed to meet the burden of showing that the Plaintiff

clearly and unmistakably fits within the administrative exemption and the motion should be denied.

### D.    Millan Is Not A Combination Exempt Employee.

Finally, Defendants also contend (without citing to any authority at all) that Mr. Millan fell within the combination exemption under 29 C.F.R. § 541.708.  But in order to qualify for the combination exemption, plaintiffs must satisfy the tests for *both* executive and professional employees.  *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 296 (4th Cir. 2007); *see also Reyes v. Texas Ezpawn*, 459 F. Supp. 2d 546 (S.D. Tex. 2006).  In *IntraComm,* the Fourth Circuit performed a thorough analysis of this exemption before holding that the requirements for each exemption sought to be used under the combination exemption be met in order for the combination exemption to apply.  That was also the interpretation that the Department of Labor espoused in its appearance in the case as *amicus curiae*.  Thus, as shown above, since Defendants cannot realistically claim that they can establish that there are no genuine issues of material fact with respect to either the administrative and computer professional exemption, they cannot qualify for the combination exemption.  *IntraComm,* 492 F.3d at 296.

### CONCLUSION

The facts set forth above and the legal principals applicable to those facts clearly demonstrate that Defendants have not and cannot meet their burden of proving by clear and convincing evidence that Plaintiff's primary duties satisfy either the administrative exemption or the computer professional exemption.  This is particularly true since Defendants are seeking summary judgment, which compels the Court to construe all facts and inferences in the light most favorable to Plaintiff.  For this very reason, "'[s]ummary

judgments in favor of parties who have the burden of proof are rare, and rightly so'.
[This] admonition applies with even greater force when, as here, [the] heightened
evidentiary standard [of clear and convincing evidence] accompanies the burden of
proof." *K & K Jump Start/Chargers, Inc. v. Schumacher Elec. Corp.*, 82 F. Supp.2d 1012,
1023 (W.D.Mo. 2000)(quoting *Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir. 1998)).

Accordingly, Plaintiff, Carmelo Millan respectfully requests that the Court deny
Defendants' motion for summary judgment in its entirety.

Dated: March 14, 2008

By: Janet Walsh (JW-8658)

Seth R. Lesser (SR-5560)
Fran L. Rudich (FR-7577)
Janet Walsh (JW-8658)
LOCKS LAW FIRM, PLLC
110 East 55th Street, 12th Floor
New York, New York 10022
Tel: (212) 838-3333
Fax: (212) 838-3735
www.lockslaw.com

**ATTORNEYS FOR PLAINTIFF**